STATE of Delaware

v.

Gary H. KAMALSKI.

STATE of Delaware

v.

Lloyd PENLAND.

STATE of Delaware

v.

Francis MONDZELEWSKI.

Superior Court of Delaware, New Castle.

Jan. 14, 1981.

Ralph K. Durstein, III, Deputy Atty. Gen., Wilmington, for the State of Delaware.

Eugene J. Maurer, Jr., Asst. Public Defender, for Gary H. Kamalski.

Carl A. Agostini, Wilmington, for Lloyd Penland.

Donald W. Booker, Wilmington, for Francis Mondzelewski.

STIFTEL, President Judge.

The three named Respondents are before this Court on their separate motions to dismiss the State's separate petitions to have each declared a habitual offender under Chapter 28 of Title 21 of the *Delaware Code.* Chapter 28 provides the machinery by which those individuals who continually disobey the motor vehicle laws of this State may have their licenses revoked for up to 5 years. 21 *Del.C.* § 2802 defines "habitual offender" as any person who has accumulated a certain type and number of traffic offenses within certain described time limits. Without going into further detail, it need only be noted that, if the abstracts of the driving records of our three Respondents are accepted at face value, each of them has fit within the parameters of Section 2802 by accumulating three or more convictions of the type listed in § 2802(1) within five years.

After a person has accumulated a sufficient number of convictions to fit within the bounds of 21 *Del.C.* § 2802, 21 *Del.C.* § 2803 requires the Secretary of Public Safety to certify the conviction record or abstract to the Attorney General. The Attorney General must then file a petition in Superior Court against the person named in the conviction record, requesting the Court to determine whether the person named is a habitual offender. 21 *Del.C.* § 2804. The Court then issues and serves upon the named individual an order requiring that individual to appear and show cause why he should not be declared a habitual offender. 21 *Del.C.* § 2805. At the hearing, the Court may inquire only whether the person appearing is the individual named in the abstract, and whether that person was indeed convicted of the offenses listed in the abstract. If the Court determines the individual is indeed the one named in the abstract and was convicted of those offenses, the Court must enter judgment against that person, and revoke his license for a period of either 3 or 5 years, depending on the applicable sub-section of 21 *Del.C.* § 2802. See 21 *Del.C.* §§ 2806, 2807. Each of the Respondents in this proceeding would be subject to a five-year suspension.

In the present case, the State has filed a petition under 21 *Del.C.*, Chapter 28 against each Respondent to have him declared a habitual offender. Each Respondent moved to dismiss the petitions of the State. Respondents Kamalski and Mondzelewski seek dismissal on the grounds that several of the convictions which render them susceptible to the habitual offender proceeding were invalid because the guilty pleas upon which convictions were based were not entered knowingly, voluntarily and intelligently; one other conviction is alleged to be invalid because it was obtained in violation of the right to counsel.

Respondent Penland alleges that the Habitual Offender Act itself is unconstitutional, contending that the application of its provisions constitutes double jeopardy and does not fulfill the requirements of due process. Also, it is alleged that this Respondent is denied due process because of the seven-month delay in bringing the habitual offender petition against him.

For the sake of judicial economy, I have combined these three motions and will decide all issues raised in this single opinion.

■ The initial question to be resolved is whether 21 *Del.C.*, Chapter 28 is invalid as violative of the Fifth Amendment of the United States Constitution as applied to the States through the Fourteenth Amendment, as well as Article I, §§ 7 and 8 of the Delaware Constitution of 1897. The first contention of Respondent Penland is that the habitual offender's provision of the Motor Vehicle Code constitutes double jeopardy, in violation of Article I, § 8 of the Delaware Constitution and the Fourteenth Amendment of the United States Constitution, because the provision imposes a second punishment for offenses where punishment has already been imposed. By drawing a vivid picture of the deleterious effects a five-year suspension of driving privileges will have on his life, Mr. Penland seeks to demonstrate that 21 *Del.C.* § 2802(1) and its enforcement provisions requiring suspensions, the only provisions in issue, impose a "punishment" as contemplated by the constitutional provisions aforementioned. He also points to certain isolated phrases in the provisions of Chapter 28 that, examined out of context, could infer the Habitual Offender Act was intended to inflict additional punishment on Respondent for his numerous traffic violations. However, after a complete examination of the statutory provisions involved and the cases which have considered this issue, I am convinced that 21 *Del.C.* § 2802(1) and its enforcement provisions do not violate the constitutional provisions prohibiting double jeopardy.

■ The primary purpose of 21 *Del.C.*, Chapter 28, is to foster public safety on the highways of this State, and not to punish persons who violate traffic regulations. 21 *Del.C.* § 2801. Statutes similar to Delaware's Habitual Offenders Act have been held to be a proper exercise of the State's police power for the protection of the motoring public. *State v. Scheffel*, 82 Wash.2d 872, 514 P.2d 1052 (1973), appeal denied, 416 U.S. 964, 94 S.Ct. 1984, 40 L.Ed.2d 554 (1974); *Anderson v. Commis-*sioner of Highways, 267 Minn. 308, 126 N.W.2d 778, 9 *A.L.R.3d* 746 (1974). In the exercise of this police power, the Legislature may prescribe procedures for the revocation of licenses of those persons who threaten the safety of the public. *State v. Scheffel, supra; Anderson v. Commissioner of Highways, supra.*

■ The Courts have consistently characterized these procedures as civil administrative procedures and rejected the contention that they are criminal proceedings. See *State v. Wilson*, La.App., 354 So.2d 1077 (1978); *Goats v. State*, Tenn.Supr., 211 Tenn. 249, 364 S.W.2d 889 (1963); *Campbell v. State, Dept. of Rev., Div. of Motor Vehicles*, 176 Colo. 202, 491 P.2d 1385, 60 *A.L.R.3d* 419 (1971); *State v. Scheffel, supra.* Since the provision against double jeopardy only prohibits twice punishing a person *criminally* for the same offense, the State may impose both a criminal and a civil penalty for the same act. *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1937); *Atkinson v. Parsekian*, N.J. Supr., 37 N.J. 143, 179 A.2d 732, 96 *A.L.R.2d* 602 (1962); *State v. Scheffel, supra.* When the penalty sought to be imposed is a civil penalty, no question of double jeopardy arises. *State v. Bowles*, 113 N.H. 571, 311 A.2d 300 (1973). It is clear, therefore, that the Habitual Offenders Act contained in Chapter 28 of Title 21 does not violate the constitutional prohibitions against double jeopardy.

■ Respondent Penland also maintains that the summary procedure mandated by 21 *Del.C.*, Chapter 28, does not meet the requirements of procedural due process. He contends that the Court should be required to consider all relevant circumstances involved in a revocation proceeding, including the effect of the revocation on his livelihood. I cannot agree.

■ Although the privilege of driving within a State as granted by a license has never been categorized as either life, liberty, or property, it is unquestionable that the suspension or revocation of this valuable privilege must meet the requirements of

procedural due process. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Carter v. Dept. of Public Safety,* Del.Super., 290 A.2d 652 (1972). Due process in this type of situation requires that the State afford the Respondent proper notice and a hearing before revoking his license, unless an emergency situation is presented. *Carter v. Dept. of Public Safety, supra.* The question is not whether the Respondent is entitled to notice and a hearing on the subject of the revocation of his license. That is expressly provided by 21 *Del.C.* §§ 2805, 2806. The question is whether the summary hearing provided by 21 *Del.C.,* Chapter 28, is sufficient for the purpose of procedural due process.

 Due process generally requires civil or administrative hearings in the context of suspension or revocation of benefits or privileges in order to safeguard against erroneous termination of benefits or privileges. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). As the issues to be determined grow less complex, so does the hearing required to satisfy due process. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977).

 It is clearly within the police power of the State to prohibit persons who habitually violate the motor vehicle laws from using the State's highways, in order to protect the general public. *Dixon v. Love, supra; State v. Scheffel, supra.* See also 60 *C.J.S.,* "Motor Vehicles", §§ 164.1, 164.4, 164.12. In the present situation, the Legislature has explicitly set out the circumstances under which the Court *must* suspend a person's license. Where the mandate of the Legislature is clear and the statute violates no constitutional provisions, the Court must follow the statute. *State v. Nicholson,* Del.Super., 334 A.2d 230 (1975). Since the Legislature may prescribe the circumstances under which a person's license may be revoked, there is no question that by this statute the Legislature has limited the issues before the Court to whether the person named in the abstract is the person

whose license is to be revoked, and whether that person was convicted of the offenses listed in the abstract which subject him to the provisions of the Habitual Offenders Act. It follows that since only these two issues need be resolved, the limited hearing provided by 21 *Del.C.,* Chapter 28, fulfills all the requirements of due process in this case.

Respondent Penland also contends that he was denied procedural due process as a result of the delay by the State in bringing the petition against him. I must disagree with this contention. Whether the delay involved was of four months, as shown by the record, or seven months, as contended by the Respondent, there is no showing that Mr. Penland was denied due process.

 It is indeed true that a delay in bringing an indictment or petition against a defendant or respondent may result in a violation of due process. However, for this delay to violate due process, it must be shown that this delay resulted in actual prejudice to the defendant, or was an intentional device by the State to gain a tactical advantage over the accused, or was brought solely to harass the accused. See *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Erickson,* Ninth Circuit, 472 F.2d 505 (1973); *United States v. McClure,* Dist. of Columbia Cir., 153 U.S.App.D.C. 370, 473 F.2d 81 (1972); *United States v. Andors,* Ninth Cir., 484 F.2d 531 (1973); *United States v. Titus,* Ninth Cir., 576 F.2d 210 (1978), cert. den., 439 U.S. 860, 99 S.Ct. 180, 58 L.Ed.2d 169 (1978); *In re Arndt,* 67 N.J. 432, 341 A.2d 596 (1975), follows the spirit of these decisions when it declares a 2½ year delay in bringing suspension proceedings an "unconscionable, harassing delay." 341 A.2d 596, at 598. Since the Respondent has failed to show that the delay in bringing habitual offender proceedings against him has unduly prejudiced or harassed him, or was manipulated by the State to gain some advantage, there is no showing that he has been denied due process, and I cannot dismiss the proceedings against him on that ground.

■ Having concluded that the proceedings mandated by 21 *Del.C.*, Chapter 28, are constitutional, I must now address the issue of whether the Respondents Kamalski and Mondzelewski may challenge as void the convictions which the Court relies upon in determining the status of Respondents as habitual offenders. It is my judgment that they cannot.

■ As a general rule, judgments rendered by a court having jurisdiction of the parties and subject matter may not be attacked as invalid in any collateral proceeding. Collateral attack is allowed only where the judgment is void, a void judgment being a judgment rendered without jurisdiction. If a judgment is merely voidable because of some other type of defect, its validity may not be impeached in a collateral proceeding. 49 *C.J.S.*, "Judgments", § 401.

This general rule was quoted with approval by the Delaware Supreme Court in *Thompson v. D'Angelo*, Del.Supr., 320 A.2d 729 (1974). Although there are no reported Delaware decisions dealing with the applicability of the general prohibition against collateral attacks in habitual offender proceedings under the Motor Vehicle Code, the overwhelming majority of the non-Delaware decisions resolving similar issues hold that an alleged offender may not collaterally attack the convictions upon which the suspension is based, unless the convictions are *void*. The rule has been applied to attempts to collaterally attack judgments in general suspension proceedings, *Com., Dept. of Transportation, etc. v. Grobes*, 45 Pa. Cmwlth. 151, 405 A.2d 588 (1979); *Application of Hathcock*, 9 Ariz.App. 178, 450 P.2d 419 (1969); *Franklin v. Department of Public Safety*, 146 Ga.App. 379, 246 S.E.2d 327 (1978); as well as in suspension proceedings pursued under a Habitual Offenders Act; *Tomlinson v. Texas Department of Public Safety*, Tex.Civ.App., 429 S.W.2d 590 (1968); *Everhart v. State*, Tenn.Cr.App., 563 S.W.2d 795 (1978); *Application of Gross*, N.Y.Supr., 284 App.Div. 786, 135 N.Y.S.2d 435 (1954); *State v. Free*, La.App., 321 So.2d 50 (1975), aff'd 325 So.2d 272 (La.1976).

Respondents cite various decisions which they contend establish a divergent line of authority allowing collateral attacks on judgments of conviction in habitual offender suspension proceedings. However, a close reading of the majority of these opinions reveals that they, too, espouse the general rule against collateral attack. In *Cofer v. Cook*, 141 Ga.App. 646, 234 S.E.2d 185 (1977), the Court reversed the suspension of a motorist's driving license because the conviction upon which the suspension was based had been rendered pursuant to a statute which had been repealed prior to the motorist's offense. Following the logic of the general rule, the Georgia Court of Appeals upheld the lower court's reversal of the suspension, holding that a conviction based upon the violation of a repealed statute is void on its face as without jurisdiction and cannot be the basis of a suspension proceeding. Similarly, the Court in *Merrigan v. Spradling*, Mo.App., 564 S.W.2d 615 (1978), repelled an attack upon a 30 day suspension, stating that "the failure of the record of the lower court to show the presence or the waiver of counsel does not void the convictions." 564 S.W.2d 615, at 618. In affirming the suspension after finding that the underlying convictions were not void, the Missouri Court impliedly followed the general rule, by denying collateral attack unless the judgment is *void*.

It becomes evident that Respondents' sole line of authority for their proposition is a pair of New Hampshire decisions, *State v. Lantaigne*, 117 N.H. 266, 371 A.2d 1170 (1977) and *State v. Ward*, 118 N.H. 874, 395 A.2d 511 (1978). Although *State v. Lantaigne, supra*, never explicitly reaches the issue of collateral attack, the two cases together implicitly reject the general prohibition on collateral attack, and allow the respondent to collaterally attack the convictions which are the basis for the suspension proceedings. Despite the eloquence of the New Hampshire Supreme Court, I remain unconvinced that this Court should allow Respondents to attack the validity of the convictions involved in these suspension proceedings.

After conviction of a motor vehicle offense in Justice of the Peace Court, a person has the right to appeal to the Superior Court via 21 *Del.C.* § 708 if the appeal is taken within 15 days. Superior Court Criminal Rule 37 similarly sets a 15 day limit upon the right to take an appeal. Superior Court Criminal Rule 45(d) explicitly prohibits an extension of time for the taking of an appeal. When an appeal is not taken within the time specified, the appellate court cannot acquire appellate jurisdiction thereafter and the right to an appeal is extinguished. *Delaware Citizens for Clean Air, Inc. v. Water and Air Resources Commission*, Del.Super., 303 A.2d 666 (1973), aff'd, Del.Supr., 310 A.2d 128 (1973); *Dixon v. Delaware Olds, Inc.*, Del.Supr., 396 A.2d 963 (1978). It is obvious that our present Respondents could not at this time perfect an appeal of the convictions upon which the habitual offender proceeding is based. I see no reason to allow these Respondents to do indirectly what they cannot do directly. Respondents were given their opportunity to appeal and ignored it. Due process does not require the courts to afford a second chance to appeal an issue which was waived initially. As noted earlier, given the limited inquiries involved in an habitual offenders suspension proceeding under 21 *Del.C.*, Chapter 28, the requirements of procedural due process are met in these suspension proceedings by affording notice and the opportunity of the alleged offender to challenge the State's identification of him as the person who was convicted of the offenses listed in the abstract. This limited hearing prevents the entry of an erroneous order of suspension, while providing the State with an efficient mechanism by which it may remove drivers from the public roads whose continued presence represents a menace to public safety. There is no reason to further extend the habitual offender proceedings to provide review of convictions where an opportunity for review has already been afforded.

In summary, then, it is my judgment that 21 *Del.C.*, Chapter 28, does not violate the double jeopardy or denial of due process prohibitions of the United States and Delaware Constitutions, nor does due process require that the Respondents be given the opportunity to collaterally attack the validity of convictions upon which the determination that Respondents are habitual offenders would be based.

For the reasons stated above, I must deny Respondents' motions to dismiss the State's petition to have Respondents declared habitual offenders under Title 21, Chapter 28 of the *Delaware Code.*

IT IS SO ORDERED.