STATE of Wisconsin, Plaintiff-Appellant,

v.

Douglas L. MADISON, Defendant-Respondent.

Court of Appeals

*No. 83–992. Submitted on briefs February 27, 1984.—*
*Decided June 21, 1984.*
(Also reported in 353 N.W.2d 835.)

For the plaintiff-appellant the cause was submitted on the briefs of *Richard A. Perkins,* district attorney, of Jefferson.

On behalf of plaintiff-appellant a supplement brief was filed by *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

For the defendant-respondent the cause was submitted on the briefs of *Larry E. Rubin,* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   The state appeals from an order dismissing its petition to adjudicate the defendant a habitual traffic offender pursuant to ch. 351, Stats.[1] The trial court dismissed the petition on grounds that the defendant had not been informed at the time he pled guilty to traffic offenses triggering his habitual offender status that mandatory revocation for five years was a consequence flowing from conviction.

We deem the issues to be:

(1) Whether alleged defects in a plea proceeding may be raised in a collateral proceeding;

(2) Whether failure to apprise a person pleading guilty to a criminal traffic offense of the collateral consequences of the plea renders conviction on the plea void;

(3) Whether the state is estopped from imposing collateral consequences in this case.

Because we conclude that the failure to warn the defendant of the collateral consequences of his plea does not render the conviction void and subject to collateral attack, and that no grounds for estoppel are disclosed in the record, we reverse.

[1] This case was originally assigned for disposition by one judge pursuant to sec. 752.31(2)(c), Stats. The chief judge designated the case to be heard by a three-judge panel pursuant to sec. 752.-31(3) on the court's motion because the case raises issues of first impression regarding the interpretation of ch. 351, Stats.

Prior to the commencement of this proceeding, the defendant pled guilty in Jefferson County Circuit Court, Branch II, to two counts of operating a motor vehicle while intoxicated (OWI) contrary to sec. 346.63, Stats., and one count of failure to stop at the scene of an accident contrary to sec. 346.67, pursuant to a plea agreement dismissing other traffic charges. The plea agreement recited that the defendant understood his driver's license would be revoked for "at least one year." The court accepted his plea and imposed a one-year revocation. The defendant had been convicted of another OWI offense which occurred within five years preceding the other offenses. The defendant was not informed at the time of his plea that conviction of the new charges would, in combination with the previous conviction, subject him to mandatory revocation for five years under ch. 351.

Chaper 351, Stats., was created by ch. 333, Laws of 1979, to provide a procedure for revoking the operating privileges of habitual traffic offenders in the interest of highway safety. Section 351.02 defines a "habitual offender" as a person whose driving record shows an accumulation of specified offenses over a five-year period.[2]

---

[2] Section 351.02, Stats., provides in material part as follows:

(1) "Habitual traffic offender" means any person, resident or nonresident, whose record, as maintained by the department shows that the person has accumulated the number of convictions for the separate and distinct offenses, regardless of the license under which the person was operating a motor vehicle, under pars. (a) and (b) committed within a 5-year period as follows:

(a) Four or more convictions of the following separate and distinct offenses, including any combination thereof, arising out of separate acts:

. . . .

3. Driving or operating a motor vehicle while under the influence of an intoxicant or controlled substance under s. 346.63.

. . . .

7. Failure of the operator of a motor vehicle involved in an accident to stop at or near the scene of the accident and report his or her identity under s. 346.67.

Under sec. 351.03, the secretary of transportation is required to certify the traffic record of any person whose record falls within that definition to the district attorney of the person's county of residence.

This proceeding was commenced in Jefferson County Circuit Court, Branch III, pursuant to sec. 351.04, Stats., which requires the district attorney receiving a certification from the secretary to file a petition for habitual offender adjudication. The district attorney was the same individual who negotiated the plea bargain on the most recent underlying offenses. The circuit court issued an order to show cause pursuant to the mandatory provisions of sec. 351.05.[3]

The defendant moved to dismiss the habitual offender proceedings on broad due process grounds, contending that he had no notice or knowledge that his plea exposed him to mandatory five-year revocation under sec. 351.06,

---

[3] Section 351.05, Stats., provides:

The court in which the petition under s. 351.04 is filed shall enter an order to show cause incorporating the certified record and directed to the person named therein, stating why he or she should not be barred from operating a motor vehicle in this state. A copy of the order to show cause, together with the record and a statement explaining the effects of being adjudged an habitual traffic offender, shall be served on the person named therein as prescribed for the service of a summons under ch. 801. Service on any nonresident may be made by service upon the secretary using the procedure specified in s. 345.09. If the person denies he or she was convicted or found in violation of any offense necessary for a holding that he or she is an habitual traffic offender, and if the court is not able to make the determination on the evidence before it, the court may certify the decision of the issue to the court in which the conviction or finding of violation was made. The court to which the certification was made shall conduct a hearing to determine the issue and send a certified copy of its final order determining the issue to the court in which the petition was filed.

Stats.,[4] in addition to the penalties mentioned in the plea agreement. The trial court agreed, ruling broadly that the state was "precluded in this particular case from pursuing the habitual traffic offender revocation due to the lack of notice given to the defendant by the Court or State at the time of his conviction for the underlying offenses."

The state contends that the defendant may not collaterally attack the validity of his underlying convictions in a habitual traffic offender proceeding. We agree.

As a general rule a judgment is binding on the parties and may not be attacked in a collateral action unless it was procured by fraud. *In re Estate of Boots,* 73 Wis. 2d 207, 216, 243 N.W.2d 225, 229 (1976) ; *Kriesel v. Kriesel,* 35 Wis. 2d 134, 139, 150 N.W.2d 416, 419 (1967). This rule was applied to repeater prosecutions in criminal actions in *State ex rel. Plutshack v. H & SS Department,* 37 Wis. 2d 713, 726–27, 155 N.W.2d 549, 556 (1968). The supreme court said :

[T]he validity of former misdemeanor convictions cannot be collaterally attacked in a proceeding for additional punishment under the repeater statute on a subsequent misdemeanor conviction for the reason that the former convictions are valid until reversed. 24B C.J.S., *Criminal Law,* p. 477, sec. 1961. Such prior misdemeanor convictions may not be subjected to collateral attacks.

---

[4] Section 351.06, Stats., provides:

If the court finds that the person before it is not the same person named in the record or that he or she is not an habitual traffic offender, the proceedings shall be dismissed. If the court finds that the person is the same person named in the record and that he or she is an habitual traffic offender, the court shall order the person's Wisconsin operating privilege revoked for a period of 5 years and shall require surrender to the court of any Wisconsin licenses then held by the person. The clerk of the court shall file a copy of the order with the department which shall become a part of the records of the department.

*See State v. Garcia* (1966), 3 Ariz, App. 194, 412 Pac. 2d 876, 265 Fed. Supp. 951 (involving *felony*).

At least two other jurisdictions have applied the rule against collateral attack in habitual traffic offender revocation proceedings under state laws similar to ch. 351, Stats. *See e.g. State v. Laughlin,* 634 P.2d 49, 51 (Colo. 1981) ; *State v. Kamalski,* 429 A.2d 1315, 1320 (Del. Super. Ct. 1981). *Laughlin* held that collateral attacks were proscribed because the only issue under the Colorado habitual offender statute was whether the defendant had sustained the requisite number of convictions. The *Kamalski* holding was based on the principle that only a void judgment may be attacked collaterally. 429 A.2d at 1320–21.

The defendant contends that *Laughlin* and *Kamalski* are inapplicable because their respective state's habitual traffic offender acts limit the scope of the proceedings to that of taking notice of convictions appearing of record, while sec. 351.03, Stats., appears to require a determination that the individual was "duly convicted" of the underlying offense. The defendant suggests that this language contemplates a broader inquiry into the validity of the underlying convictions, at least where the convictions were pursuant to a plea bargain. We reject the contention.

Like Colorado and Delaware, Wisconsin provides the defendant notice and an opportunity to dispute the existence of the convictions enumerated in the official traffic record.[5] In each state, the inquiry is limited to determining whether the defendant is the same person as the person named in the record or abstract of convictions, and whether the defendant was in fact convicted

---

[5] *Compare* sec. 351.05, Stats., *with* Colo. Rev. Stat. sec. 42–2–203, 42–1–123(8)–(12) (1973) ; Del. Code Ann. tit. 21, sec. 2805, 2806 (1979).

of the underlying offenses.[6] In each, officially maintained traffic records constitute presumptive evidence of the underlying convictions.[7]

While the opportunity afforded to dispute record convictions would logically entitle the defendant to challenge the number and nature of those convictions, the Wisconsin Statutes do not expressly provide an opportunity to attack their validity in a habitual offender proceeding. The provision of sec. 351.03, Stats., that the certified driver's record constitutes prima facie evidence that an individual defendant was "duly" convicted of the offenses it contains does not implicitly confer the right or duty on the court presiding over such proceedings to determine the validity of those convictions. To so construe the language would turn the limited and relatively simple inquiry contemplated by secs. 351.05 and 351.06 into a quagmire of relitigation of determinations made in other forums. It would also frustrate the legislative purpose to facilitate the removal of habitual traffic offenders from Wisconsin highways,[8] while serving no

[6] *Compare* sec. 351.06, Stats., *with* Colo. Rev. Stat. sec. 42-2-203, 32-2-123(11) (1973); Del. Code Ann. tit. 21, sec. 2807 (1979).

[7] Both Wisconsin and Colorado provide that official state records constitute prima facie evidence of the convictions. Colo. Rev. Stat. sec. 42-2-202(1) (1973); sec. 351.03, Stats. In Delaware such records are "competent evidence" that the person named was "duly convicted" of the enumerated offenses. Del. Code Ann. tit. 21, sec. 2803 (1979).

[8] The legislative purpose behind the habitual offender act is set forth in sec. 351.01, Stats., as follows:

The legislature intends by enacting this chapter:

(1) To provide maximum safety for all users of the highways of this state.

(2) To deny the privilege of operating motor vehicles to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws, courts and administrative agencies of this state.

purpose which is not afforded by direct appeal of convictions or through other means.[9]

*State v. Ward,* 395 A.2d 511 (N.H. 1978) offers no support for the defendant's position. In that case the court cited prior New Hampshire rulings that "convictions obtained when a person entitled to counsel was neither represented by counsel nor knowingly and intelligently waived his right to counsel cannot be used to support a habitual offender finding." 395 A.2d at 512 (citations omitted). It held that the state was not required, in light of this rule, to prove that a defendant in habitual offender proceedings had waived or been afforded constitutionally requisite counsel for each underlying criminal offense, but rather that the burden of proving a violation of that right was on the defendant when he "challenges the validity rather than the existence of a prior conviction." 395 A.2d at 513.

*Ward* does not stand for the proposition that the validity of underlying convictions may be challenged as a matter of course in habitual offender proceedings. It rests upon the fundamental principle that convictions

---

(3) To discourage repetition of traffic violations by individuals against the peace and dignity of this state and its political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual traffic offenders who have been convicted repeatedly of traffic law violations.

[9] Section 351.05, Stats., provides that if the court conducting a habitual offender proceeding is unable to determine the existence of a conviction necessary to adjudicate the individual's status, it may certify that issue to the court where the conviction or finding of violation was made. *See also State v. Laughlin,* 634 P.2d 49, 51 (Colo. 1981), noting the availability of judicial proceedings to determine constitutional attacks on underlying traffic convictions in partial support of its holding that such attacks could not be determined in administrative proceedings to impose habitual offender penalties.

obtained in violation of a defendant's constitutional right to counsel may not be the basis of an enhanced penalty because they are void. *Burgett v. Texas,* 389 U.S. 109, 114–15 (1967). A void judgment is subject to collateral attack. *Kohler Co. v. ILHR,* 81 Wis. 2d 11, 25, 259 N.W.2d 695, 701 (1977) ; *Kamalski,* 429 A.2d at 1320.

In this case the defendant asserts no constitutional violation which would render the underlying traffic convictions void. He was represented by counsel when he entered his plea to the criminal charges which triggered his habitual offender status. To the extent that *Ward* implies a right to challenge the validity of prior convictions in habitual offender proceedings based on a deprivation of sixth amendment rights, the case is not on point.

The defendant's assertion is premised on his claim that the prosecutor or judge had a duty as a matter of constitutional due process to inform him before negotiating and accepting his plea that it would subject him to the mandatory five-year revocation imposed by the habitual offender act. He notes that sec. 343.27, Stats., requires both such officials to inform a person charged with violating a law which imposes a period of revocation "upon conviction" that revocation will result from a plea of guilty or no contest.[10] In *State v. Bartelt,* 112

---

[10] Section 343.27, Stats., provides:

(1) Whenever a person is charged with a violation of law which requires upon conviction that his operating privilege be revoked, the . . . district attorney handling the case shall inform him that a plea of guilty or no contest or a forfeiture of deposit under ch. 345 will result in such revocation and shall require him to sign a statement to the effect that he has been so informed . . . .

(2) Before taking the plea of a person charged with a violation of law which requires upon conviction that such person's operating privilege be revoked . . . the presiding judge . . . shall inform the defendant that conviction will result in his operating privilege being revoked . . . .

Wis. 2d 467, 485–86, 334 N.W.2d 91, 99–100 (1983), the supreme court held that a plea entered in violation of a defendant's due process rights, including the right to enter a "knowing and voluntary" plea after being informed of the criminal penalties which could be imposed, was "void," and entitled to be withdrawn.

While conceding that the state had no express obligation under sec. 343.27, Stats., to apprise him of collateral, as well as the direct consequences of his plea, the defendant urges that principles of basic fairness impose that obligation where the state must have known that his plea to the most recent offenses, in combination with the prior OWI conviction, would result in a far longer revocation than he had bargained for.

This contention has no Wisconsin authority and is against the weight of authority in other jurisdictions which have considered it. In a case similar to this one, the supreme court of New Hampshire stated:

We hold that a defendant need only be advised of the direct consequences of his guilty plea and not of consequences which are collateral. Because consequences attendant to the commission of an offense are so numerous and logically unforeseeable, to require more would be an absurdity and would impose upon the trial court an impossible, unwarranted and unnecessary burden. (Citation omitted.)

*State v. Fournier*, 385 A.2d 223, 224 (N.H. 1978). *Accord, Villa v. State*, 456 A.2d 1229, 1232 (Del. 1983).

The Colorado Supreme Court came to the same conclusion in rejecting a contention that the state had a duty to inform regarding demerit points which would be assessed against a driver's record as result of a traffic conviction:

The failure to warn a person charged with a traffic offense that he will accumulate a designated number of points against his driving record upon conviction does

not breach any constitutional protections . . . . The imposition of points has no immediate criminal effect. Such an assessment does not by itself allow the imposition of any additional punishment. *See* American Bar Association Standards Relating to Pleas of Guilty 14–1.4 (approved draft, 1978). While it may allow the state to revoke the defendant's driver's license, this civil consequence need not be disclosed to satisfy any constitutional mandate. *People v. Hampton,* 619 P.2d 48, 52 (Colo. 1980).

In *Moore v. Hinton,* 513 F.2d 781, 782 (5th Cir. 1975), the court of appeals held that due process did not require that a defendant pleading guilty to an OWI charge be informed that revocation was a collateral consequence of his plea. The court said:

Numerous cases establish that defendants need not be informed of such collateral consequences in order to voluntarily and intelligently plead guilty. In Meaton v. United States, 328 F.2d 379 (5th Cir. 1964) [*cert. denied* 380 U.S. 916 (1965)] for example, this court rejected the contention that appellant should be allowed to withdraw his guilty plea to a mail fraud charge because he had not been informed that, as a convicted felon, he would automatically forfeit his rights to vote and to travel abroad. In Wadley v. Davis, 445 F.2d 1, 3 (5th Cir. 1971) this court held that appellants were not entitled, before pleading guilty to a crime of "moral turpitude," to be informed that if they did so plead, they would automatically be struck from the local voting rolls; "[T]he loss of franchise is a result of the conviction, not the plea." *Cf.* Trujillo v. United States, 377 F.2d 266 (5th Cir. 1967) (defendant need not be informed before pleading guilty, that he will not be eligible for parole under the mandatory sentence to be imposed) [*cert. denied* 389 U.S. 899 (1967)]. Courts have also held that defendants are not entitled to be informed that a likely consequence of a guilty plea is deportation, United States v. Parrino, 212 F.2d 919 (2nd Cir. 1954) [*cert. denied* 348 U.S. 840 (1954)] or an undesirable discharge from the armed forces, Redwine v. Zuckert, 115 U.S. App. D.C. 130, 317 F.2d 336 (1963).

We find these authorities persuasive. Like them, we hold that the defendant had no due process right to be informed of the collateral consequences under the habitual offender act of his plea to the underlying traffic offenses.

The defendant's final argument is in the nature of a claim of estoppel. He relies on *State v. Beckes,* 100 Wis. 2d 1, 6, 300 N.W.2d 871, 874 (Ct. App. 1980), in which this court stated: "The concept of fundamental fairness does prohibit the government from breaking a promise which induced the defendant to take some action detrimental to himself in reliance on the bargain."

*Beckes,* which considered the power of prosecutors to withdraw from plea bargains, is not on point. In this case the prosecutor adhered to a written plea bargain expressly reciting that the defendant's license would be revoked "for at least one year" as the result of his plea. The court could have imposed one year's revocation on each of the two OWI charges as a direct consequence of the convictions on the plea. Instead, it revoked for a total of only one year. The defendant received the benefit of his bargain.

The state had no power to bargain with respect to the penalty mandated by the habitual offender act. Neither the prosecutor nor the court had discretion to refuse to prosecute or impose that penalty.[11] The defendant was represented by counsel when he entered his plea. There is no suggestion that misrepresentations were made dur-

[11] Section 351.04, Stats., provides that the district attorney receiving a certified record from the secretary "shall" file a habitual offender petition. Under sec. 351.05, the court in which such a petition is filed "shall" issue an order to show cause and, under sec. 351.06, "shall" impose a five-year revocation if it finds that the defendant is the same person named in the record and that the defendant is a habitual offender.

ing the course of plea bargaining. The defendant's claim of estoppel is rejected.

*By the Court.*—Order reversed.