STATE of Delaware,

v.

Anthony L. MANISTA.

File No. AN94–0787.

Family Court of Delaware,
New Castle County.

Submitted: June 17, 1994.
Decided: June 29, 1994.

John P. Deckers, Deputy Atty. Gen., Dept. of Justice, Wilmington, for State.

Sheryl Rush–Milstead, Wilmington, for respondent, Anthony L. Manista.

JAMES, Judge.

Present before the Court is a Motion to Dismiss filed by defendant, Anthony L. Manista. The motion seeks dismissal of a criminal charge of harassment which was filed against defendant on March 18, 1994.

In addition to the criminal filing, defendant's spouse, Claire Manista, filed a Petition for Order of Protection from Abuse on that same day. Her petition alleged that: Mr. Manista had threatened her existence in Delaware on March 12, 1994; on March 13, 1994, he came to Mrs. Manista's house and withdrew all of their mutual agreements on separation; on March 17, 1994, he called her at work and harassed her; and on March 18, 1994, he went to her place of employment and stole her vehicle.

A hearing on the Protection from Abuse Petition was held before Commissioner Ellen Marie Cooper on April 15, 1994. In her ruling, Commissioner Cooper stated that "[a]fter testimony given by both parties, the Court finds that no act of abuse has been committed." *Manista v. Manista,* Del.Fam., File No. CN92–10634, Cooper, Com. (April 15, 1994). Therefore, Mrs. Manista's request for a protection from abuse order was denied.

Defendant claims that since the allegations which were made in the criminal complaint mirror those which were the basis for the protection from abuse petition, the criminal complaint against him must also be dismissed. He argues that the prosecution would, otherwise, be unconstitutional in light of the federal and state constitutional provisions prohibiting the government from placing an individual in double jeopardy. He submits that proceedings under 10 *Del.C.* §§ 945–952 are criminal or at least quasi-criminal in nature. He bases his assertion on the fact that a violation of a protective order entered by this Court may result in the imposition of criminal contempt.

Alternatively, defendant argues that since the issue of harassment has already been litigated at the protection from abuse hearing, the doctrine of collateral estoppel bars the State from relitigating that issue in a different forum.

The State responds to defendant's motion to dismiss by asserting that the protection from abuse proceeding was civil in nature and, furthermore, that the State may impose both a criminal and a civil penalty for the same act. Since the State argues that the theory of double jeopardy is inapplicable, it further submits that it is not precluded from pursuing a criminal remedy against the defendant.

The State further contends that a judgment of a civil court generally is not binding upon a court in which a criminal case is being tried. Moreover, the State argues that the doctrine of collateral estoppel is limited to situations where the matter raised in the second suit is identical in all respects to the matter of the first proceeding. Accordingly, since the protection from abuse proceeding is a civil proceeding based upon a preponderance of the evidence standard of proof, collateral estoppel is not permitted as a defense specifically because the criminal proceedings are based upon an entirely different standard of proof.

Our legislature recently enacted the Protection from Abuse Act.[1] The Act was intended to protect against domestic violence, which is defined by the Act as follows:

---

1. 10 *Del.C.* §§ 945–952.

abuse perpetrated by one member against another member of the following protected classes: (i) Family, as that term is defined in § 901(9) of this title, regardless, however, of state of residence of the parties; or (ii) Former spouses, a man and a woman co-habitating together with or without a child or either or both, or a man and a woman living separate and apart with a child in common.

10 *Del.C.* § 945.

After consideration of the petition for a protective order, the Court may grant a number of civil remedies as provided in the Act.[2] The order is effective for a fixed period of time, not to exceed 1 year, 10 *Del.C.* § 949(b), but the Court has the ability to modify the order. The Act further provides that "[a]ll protective orders issued under this part shall state that violations may result in: (1) A finding of contempt; (2) Criminal prosecution; and (3) Imprisonment or fine or both," 10 *Del.C.* § 950(d), and "[i]t shall be unlawful for a respondent to knowingly violate a protective order. Violations shall be punishable as a class A misdemeanor. Nothing in this subsection shall preclude the filing of a civil contempt petition by the petitioner for violations of a protective order issued under this part." 10 *Del.C.* § 950(e).

The United States and Delaware Constitutions both provide that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. CONST., amend. V., DEL. CONST., art. I, § 8. Discussing the theory of double jeopardy, our Supreme Court has stated that

> [t]he United States Supreme Court has recognized that the effect of the double jeopardy clause is to afford to criminal defendants several basic protections. Specifically, the Court has held that "[the double jeopardy clause] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense".

*Tarr v. State*, Del.Supr., 486 A.2d 672, 674 (1984) (quoting *Ohio v. Johnson*, 467 U.S. 493, 497–99, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984)).

■ The United States Supreme Court has ruled that the guarantee against double jeopardy proscribes exposure to criminal prosecutions for the same offense after conviction or acquittal and protects against multiple punishments for the same offense.

---

2. 10 *Del.C.* § 949 provides the following forms of relief:

(1) Restrain the respondent from committing acts of domestic violence as defined in § 945 of this title;

(2) Restrain the respondent from contacting or attempting to contact the petitioner;

(3) Grant exclusive possession of the residence or household to the petitioner or other resident, regardless of in whose name the residence is titled or leased. Such relief shall not affect title to any real property;

(4) Order that the petitioner be given temporary possession of specified personal property solely or jointly owned by respondent or petitioner, including but not limited to, motor vehicles, checkbooks, keys and other personal effects;

(5) Grant temporary custody of the children of the parties to the petitioner or to another family member, and provide for visitation with the respondent, if appropriate, including third party supervision of any visitation, if necessary, in accordance with Chapters 7 and 19 of Title 13;

(6) Order the respondent to pay support for the petitioner and/or for the parties' children, in accordance with Chapter 5 of Title 13, including temporary housing costs;

(7) Order the respondent to pay to the petitioner or any other family member monetary compensation for losses suffered as a direct result of domestic violence committed by the respondent, including medical, dental and counseling expenses, loss of earnings or other support, cost or repair or replacement of real or personal property damaged or taken, moving or other travel expenses and litigation costs, including attorney's fees;

(8) Order the respondent to temporarily relinquish to the sheriff, constable or to a police officer the respondent's firearms for the duration of the order;

(9) Prohibit the respondent from transferring, encumbering, concealing or in any way disposing of specified property owned or leased by parties;

(10) Order the respondent, petitioner and other protected class members, individually and/or as a group, to participate in treatment or counseling programs;

(11) Grant any other reasonable relief necessary or appropriate to prevent or reduce the likelihood of future domestic violence.

*North Carolina v. Pearce*, 395 U.S. 711, 716–17, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Furthermore, the exposure to a subsequent criminal prosecution where double jeopardy may exist is not present in proceedings that are not "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528–29, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975).

> "The essential nature of a proceeding is not determined by its form or label. . . . *United States v. U.S. Coin & Currency*, 401 U.S. 715, 718, 91 S.Ct. 1041, 1043, 28 L.Ed.2d 434 (1971). *A proceeding is criminal for double jeopardy purposes, if it imposes a sanction intended as punishment.* See *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 [L.Ed.] 917 (1938)."

*State v. Smith*, Ct.Supr., 207 Conn. 152, 540 A.2d 679, 692 (1988) (underline supplied) (quoting *State ex rel. Flowers v. Department of Health*, Supr., 81 Wis.2d 376, 260 N.W.2d 727 (1978)).

In a similar Pennsylvania case, the defendant contended that Pennsylvania's Protection From Abuse Act[3] was a criminal proceeding. He based his contention, in part, on his belief that since the Pennsylvania Supreme Court had ruled that a violation of a protective order constituted criminal contempt, it followed that the original protection from abuse proceeding was itself a criminal proceeding. Moreover, he complained that it was the entry of the protection from abuse order which was the final disposition of a criminal prosecution. The Superior Court of Pennsylvania held that "[t]hat reading is incorrect." *Commonwealth v. Smith*, 380 Pa.Super. 484, 552 A.2d 292, 293 (1988). Rather, the Court explained that the "primary purpose of the act is not retrospective punishment, but rather, advance prevention of physical and sexual abuse." *Id.* 552 A.2d at 295 (citing *Eichenlaub v. Eichenlaub*, 340 Pa.Super. 552, 490 A.2d 918, 922 (1985)). In

that regard, the Pennsylvania appellate court affirmed the trial court's denial of defendant's motion to quash the criminal charges.

This Court, therefore, must decide whether a proceeding under Delaware's Protection from Abuse Act is a civil or criminal proceeding. In a related case, upon reviewing whether a license revocation proceeding is civil or criminal in nature, our Supreme Court stated that the "revocation is essentially civil in nature, having as its goal 'the chastening of the errant motorist' (*Barnes [v. Tofany*, 27 N.Y.2d 74, 313 N.Y.S.2d 690, 694], 261 N.E.2d [617] at 620) (1970) and, more importantly, protection of the public from a dangerous driver." *Villa v. State*, Del.Supr., 456 A.2d 1229, 1232 (1983). Moreover, the "primary purpose of 21 *Del.C.*, Chapter 28 [license revocation for habitual traffic offenders], is to foster public safety on the highways of this State, and not to punish persons who violate traffic regulations." *State v. Kamalski*, Del.Super., 429 A.2d 1315, 1318 (1981).

Similarly, the Supreme Judicial Court of Maine has explained that punitive damages arising out of a civil action cannot infringe on a defendant's constitutional right against double jeopardy because such a claim "is based upon a *private* wrong, and is clearly distinguishable from a criminal prosecution, which is brought solely on the behalf of the public." *Tuttle v. Raymond*, Me. Supr.Jud.Ct., 494 A.2d 1353, 1357 (1985).

The Protection from Abuse Act, 10 *Del.C.* §§ 945–952, is not targeted at punishing the wrongdoer; rather, its purpose is to help protect the victim against further acts of violence or abuse. The petition is prosecuted by the petitioner[4], usually the victim. The Attorney General's Office is neither directly nor indirectly involved. Furthermore, the standard of proof at a protection from abuse hearing is by a preponderance of the evidence, 10 *Del.C.* § 948, which is clearly indic-

---

**3.** 23 Pa.C.S.A. §§ 6101–6117 (original version at 35 P.S. § 10181).

**4.** Petitioner is defined to mean:
(i) A person who is a member of a protected class and files a petition alleging domestic violence against himself or herself or against his or her minor child or an infirm adult;

(ii) The Division of Child Protective Services acting in the interest of a minor child and files a petition alleging domestic violence; or
(iii) The Division of Adult Protective Services acting in the interest of an infirm adult and files a petition alleging domestic violence.
10 *Del.C.* § 945(3).

ative that the proceeding is civil in nature. Moreover, the addition of § 951, which specifically provides that "[n]othing in this part shall preclude a petitioner or law enforcement officer from filing criminal charges when probable cause exists" is demonstrative of the legislative intent of providing the petitioner with both a civil and criminal remedy.

The United States Supreme Court has concluded that both a criminal and a civil penalty may be imposed for the same act or course of conduct and yet be consistent with the constitutional protection against double jeopardy. *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 234–36, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972).

Our Supreme Court has also stated that "[i]t is well established that double jeopardy 'only prohibits twice punishing a person *criminally* for the same offense, [and that] the State may impose both a criminal and a civil penalty for the same act.'" *Tarr v. State,* Del.Supr., 486 A.2d 672, 675 (1984) (quoting *State v. Kamalski,* Del.Super., 429 A.2d 1315, 1318 (1981)). *See also Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938). "When the penalty sought to be imposed is a civil penalty, no question of double jeopardy arises." *Kamalski,* 429 A.2d at 1318.

■ Therefore, it is the determination of this Court that a proceeding under the Protection from Abuse Act in which the petitioner is seeking an order of protection from abuse is a civil proceeding. Accordingly, a subsequent criminal proceeding based upon the same facts as those which were alleged in the Petition for Order of Protection from Abuse does not infringe upon the constitutional prohibition against double jeopardy.[5]

■ Turning to defendant's collateral estoppel argument in support of his Motion to Dismiss, the United States Supreme Court has stated as follows:

Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Collateral estoppel, like the related doctrine of res judicata, serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. [411, 415], 66 L.Ed.2d 308 (1980). In furtherance of those policies, this Court in recent years has broadened the scope of the doctrine of collateral estoppel beyond its common law-limits. *Ibid.* It has done so by abandoning the requirement of mutuality of parties, *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313[,] 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and by conditionally approving the "offensive" use of collateral estoppel by a nonparty to a prior lawsuit. *Parklane Hosiery [Co. v. Shore],* [439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)].

*United States v. Mendoza,* 464 U.S. 154, 157–59, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (footnote omitted).

Justice Rehnquist, writing for the majority in *Mendoza,* stated that when collateral estoppel issues arise between private litigants, "'no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and [that] there is no sound reason for burdening the courts with repetitive litigation.'" *Id.* 464 U.S. at 159, 104 S.Ct. at 572 (quoting *Standefer v. United States,* 447 U.S. 10, 24, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980)). Thereafter, based upon policy reasons, the Court determined that nonmutual offensive collateral estoppel[6] could not be applied

5. The Court notes that a violation of a protective order which results in criminal contempt, followed by a subsequent criminal prosecution for the same conduct which resulted in the violation, may offend the principles of double jeopardy. *See U.S. v. Dixon,* — U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

6. By way of explanation, "offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party. Defensive use of collateral estoppel occurs when a defendant seeks to prevent a

against the United States Government in order to preclude litigation of issues. It is important to note, however, that in *Mendoza*, the Government was a party to prior litigation regarding substantially similar facts. Additionally, the party who was seeking to preclude the Government was not a party to the earlier litigation.

Our Supreme Court has also abandoned the requirement of mutuality for purposes of collateral estoppel. *Columbia Casualty Co. v. Playtex FP, Inc.*, Del.Supr., 584 A.2d 1214, 1217 (1991).

> Thus, many jurisdictions no longer require that a litigant have been a party in the prior litigation or in privity with a party in the prior litigation in order to assert collateral estoppel. <u>It is sufficient that the party against whom collateral estoppel is asserted was a previous party.</u>

*Id.* (underline supplied).

Our Courts have also recognized that once a party to a prior proceeding has had a full and fair opportunity to litigate an issue in the first action, that issue may not be reargued by a party to the first proceeding. *In re Asbestos Litigation (Lee)*, Del.Super., 517 A.2d 288, 293 (1986). In that regard, "[t]he doctrine of collateral estoppel bars relitigation of 'questions distinctly put in issue' and '<u>directly determined adversely to the party against which the estoppel is asserted.</u>'" *Kostelanetz, Ritholz v. Himmelwright*,

plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party."

254 N.J.Super. 249, 603 A.2d 168, 169 (1991) (underline supplied) (quoting *Eatough v. Board of Medical Examiners*, 191 N.J.Super. 166, 465 A.2d 934 (1983)), *aff'd*, 264 N.J.Super. 578, 625 A.2d 488 (1993).

> Mutuality of parties need not exist for collateral estoppel to apply, but it must be shown that:
>
> > (1) the issue decided in the prior adjudication was identical with the one presented in the subsequent action, (2) the prior action was a judgment on the merits, and (3) the party against whom it was asserted had been a party or in privity with a party to the earlier adjudication.

*Id.* (citations omitted).

Accordingly, this Court determines that the State cannot be collaterally estopped from litigating the issue of harassment as described in the criminal complaint. The State was not a party to the protection from abuse hearing and in that regard, did not have a full and fair opportunity to litigate its case against defendant. Therefore, defendant's motion to dismiss is denied.

*United States v. Mendoza*, 464 U.S. at 159 n. 4, 104 S.Ct. at 571–572 n. 4.