DECISION
Applicant, Michael Morris (Applicant or Morris), has filed a request for post-conviction relief (PCR) pursuant to R.I.G.L. 1956 § 10-9.1-1. Morris alleges that he did not knowingly enter into a plea agreement with the State and that the sentencing justice committed error by failing to consider Morris' presentence report at sentencing. For the reasons set forth below, the Court denies Morris' petition for post-conviction relief.
 Facts 
On January 31, 1991, Morris pleaded nolo contendere to charges that on March 12, 1990, Morris assaulted Roland Huneault with a dangerous weapon. Under the terms of the plea agreement, Morris received a ten year sentence with three months to serve and 117 months suspended sentence with probation. Thereafter, on January 26, 1995, Morris was found to have violated the conditions of his probation and was sentenced to seventy-eight months to serve. Subsequently, the Court found Morris to be a habitual criminal under the provisions of R.I.G.L. 1956 § 12-19-21
and sentenced Morris to twenty years imprisonment.
In his petition for post-conviction relief, Morris avers that he did not knowingly waive his right to a jury trial when he entered into his plea agreement with the State. Specifically, Morris asseverates that he was not informed, that by entering a plea of nolo contendere to the charge of assault with a dangerous weapon, the plea could then later be used to buttress a finding as an habitual offender under R.I.G.L. 1956 § 12-19-21. Morris maintains that exposure to an enhanced criminal sentence was as a direct consequence of his plea of which the trial justice was obligated to inform him. Additionally, Morris argues that he did not waive his right to have the Court consider a presentence investigation report prior to the imposition of sentence. Morris alleges that the Court erred by accepting Morris' plea without establishing a waiver on the record.
 DISCUSSION
When accepting a defendant's entry of a plea, Boukin v. Alabama,395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), requires that the trial justice canvass the defendant anent the constitutional rights he or she is waiving and insure that a record is made of a defendant's constitutional waivers. "The court should advise and admonish the defendant about the nature of the charges and that [the Supreme] Court will look for record evidence to ascertain whether a criminal defendant was made aware of the consequences of a plea and the rights that the defendant was giving up, including the right to a jury trial." State v.Thomas, 794 A.2d 990, 993 (R.I. 2002) (citations omitted). A party challenging the validity of a plea must prove "by a preponderance of the evidence, that he [or she] did not already understand the nature of the charges and the rights he [or she] was giving up, either through prior experience with the criminal courts of this state or by reason of having been so advised by counsel." Id. (citations omitted).
A plea of guilty to a charge of criminal conduct is valid only if voluntarily and intelligently made and evidenced in the record of the hearing. State v. Figueroa, 639 A.2d 495, 498 (R.I. 1994). A plea of nolo contendere, as entered by Morris, "is the substantive equivalent of a guilty plea in Rhode Island." Id. An applicant who seeks to vacate his or her plea has the burden of proving by a preponderance of the evidence that his or her plea was not entered willingly and knowingly. Carpenterv. State, 2002 R.I. LEXIS 100 (No. 2000-339-C.A. May 9, 2002); Figueroa,
639 A.2d at 498.
Rhode Island Criminal Procedure Rule 11 limns the importance of pleas made willfully and knowingly. Rule 11 provides in pertinent part:
 The court. . . shall not accept. . . a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.
R.I.Crim.P.R.11. With this backdrop, the Court evaluates Applicant's petition.
 Potential Habitual Offender
In order for the entry of a plea to be valid, "a defendant need only be made aware of the direct consequences of his plea." Beagen v. State,705 A.2d 173, 175 (R.I. 1998). A direct consequence is defined as "one that definitely, immediately and largely automatically flows from the conviction." State v. Parker, 244 Wis.2d 145, 150, 629 N.W.2d 77, 80 (2001); See also Kaiser v. State, 621 N.W.2d 49, 53 (Minn. 2001). While our Supreme Court has not had the opportunity to decide if the prospective imposition of an enhanced sentence qualifies as a direct consequence for the entry of pleas, our Supreme Court has held that a "consequence is deemed collateral, rather than direct, if its imposition is controlled by an agency which operates beyond the direct authority of the trial judge." Figueroa, 639 A.2d at 499; accord Beagen, 705 A.2d at 175; State v. Desir, 766 A.2d 374, 376 (R.I. 2001). Morris argues that since the imposition of an habitual offender sentence lies within the direct authority of the trial court and not within the purview of an outside agency, then the consequence of an enhanced sentence is direct warranting advisement by either the trial justice, defense counsel or both.
In the consolidated case of State v. Figueroa/Tavarez, alien defendants entered into nolo contendere pleas for possession of firearms without licenses. At the time of their arrests, both men were lawful permanent residents of the United States and both were nationals of the Dominican Republic. As a result of the pleas on weapons charges, the Immigration and Naturalization Service (INS) instituted deportation proceedings against the two aliens. In their petitions for post-conviction relief, both men argued that they would not have entered into plea agreements and would have gone to trial had they known that INS would begin deportation proceedings following the entry of nolo pleas. Our Supreme Court held that "[t]he possibility of deportation is only a collateral consequence because that sanction is controlled by an agency which operates beyond the direct authority of the trial judge." Figueroa, 639 A.2d at 499 (internal quotes and citations omitted).[1]
The dichotomy between direct and collateral consequences was again challenged in Beagen v. State, 705 A.2d 173 (R.I. 1998). Defendant, Andrew Beagen, pleaded nolo contendere to a charge of possession of less than one ounce of cocaine with the intent to deliver. Beagen received a four year suspended sentence with supervised probation. While still on probation, Beagen was convicted in the United States District Court for the District of Rhode Island for conspiracy and intent to deliver a controlled substance. Under federal sentencing guidelines, since Beagen was on probation at the time of his arrest, Beagen faced a mandatory sentence of twenty years' incarceration. In an effort to avoid the mandatory federal sentence, Beagen filed a petition for post-conviction relief in Rhode Island Superior Court alleging that neither the Court nor his attorney advised him that a plea of nolo contendere could someday subject Beagen to enhanced sentencing under the federal sentencing guidelines. After restating its holding in Figueroa, our Supreme Court held:
 "[i]t is axiomatic that the federal criminal system is outside the authority or control of a Superior Court justice, or other agent of the State of Rhode Island. The possibility that applicant could face a stiffer sentence in the federal courts in the future was a collateral consequence of his nolo plea."
Beagen, 705 A.2d at 175.
Morris' interpretation of our Supreme Court's past enunciations on the meaning of direct and collateral consequences is misplaced. Our Supreme Court's interpretation of direct consequences is entirely consistent with the definitions promulgated by the Wisconsin and Minnesota Courts of Appeal ante. Therefore, this Court must determine whether the potential imposition of a future habitual offender sentence is "one that definitely, immediately and largely automatically flows from the conviction." State v. Parker, 244 Wis.2d 145, 150, 629 N.W.2d 77, 80 (2001); See also Kaiser v. State, 621 N.W.2d 49, 53 (Minn. 2001).
General Laws § 12-19-21 governs the procedures for incarcerating habitual criminals. Section 12-19-21 provides that if a person who has been convicted previously of two or more felony offenses arising from separate incidents and has received at least two terms to serve in prison and is then convicted of an offense punishable by at least a year of imprisonment, then that person "shall be deemed an `habitual criminal.'" R.I.G.L. 1956 § 12-19-21. The statute further provides that the Attorney General must file with the Court a notice that the defendant, if convicted, is subject to the imposition of an additional sentence as an habitual offender. R.I.G.L. 1956 § 12-19-21 (b). The statute also requires a hearing, following conviction, to be held without a jury and notice to the defendant of such a hearing. If the trial justice finds by a preponderance of the evidence that a defendant is an habitual criminal, then the defendant shall be sentenced to a consecutive maximum sentence of twenty-five years. Id.
Consequently, a determination that a defendant is an habitual criminal is one that is subject to notice, hearing and sentencing. Such a determination does not definitely, immediately, and automatically flow from the underlying conviction. As a result, the potential future imposition of an enhanced sentence under the habitual criminal statute is a collateral consequence to Morris' plea of nolo contendere. Major v.State, 2002 Fla. LEXIS 540; People v. Crosby, 3 Cal.App.4th 1352,5 Cal.Rptr.2d 159 (1992); Wright v. United States, 624 F.2d 557, 561 (5th Cir. 1980); Bethune v. State, 774 So.2d 4 (Fl. D.Ct.App. 2000); Parker,
244 Wis.2d at 151, 629 N.W.2d at 80; State v. Madison, 120 Wis.2d 150, 159, 353 N.W.2d 835, 840 (1984); State v. Harper, 498 A.2d 310, 315 (N.H. 1985). As such, Morris was not entitled to the trial justice's legal foresight anent Morris' potential for future criminal conduct and the consequences thereto. "The onus [is not] upon the trial justice to explore every possible consequence of a plea in order for the plea to be voluntary." Desir, 766 A.2d at 377. A "trial court should not be required even before imposing sentence for one crime to inform the defendant what the sentence may be for committing another crime." Crosby, 3 Cal.App.4th at 1356, 5 Cal.Rptr.2d at 161. In the instant case, the trial justice explained to Applicant his rights under the law and the Applicant's waiver of those rights. The trial justice asked Morris if he understood the nature and waiver of his rights. Morris responded affirmatively. Accordingly, Morris knowingly and willingly entered into a plea of nolo contendere on the charge of assault with a dangerous weapon.
 Presentence Report
Morris next assails the trial justice for failing to consider Morris' presentence report before accepting Morris' plea of nolo contendere. General Laws § 12-19-6 provides as follows:
 Whenever an accused shall be found guilty after trial or shall plead guilty or nolo contendere on any charge for which a sentence of more than one year may be imposed, the court shall, before imposing sentence, have presented to it by the administrator of probation and parole a presentence report. All local and state police agencies shall furnish to the administrator of probation and parole such criminal records as the administrator may request.
According to Morris, Section 12-19-6 requires that the trial justice consider a defendant's presentence report and should a defendant waive the justice's consideration, then such waiver must appear on the record.
Morris cites the following passage from the hearing transcript as evidence that the trial justice did not read or consider Morris' presentence report:
 THE COURT: I'm going to accept your plea of nolo contendere presentence report. Any objections to the waiver?
Criminal Procedure Rule 32 (c) requires that the administrator of probation and parole prepare a presentence investigation report for the Court. R.I. Crim. R. P. 32 (c); State v. Sousa, 116 R.I. 411, 413,358 A.2d 44 (1976). The principal function of the report is to assist the trial justice determine the appropriate sentence. State v. Cianci,485 A.2d 565, 566 (R.I. 1984). "[T]he report must be presented to the trial justice before the imposition of sentence." Sousa, 116 R.I. at 413. However, the trial justice is not required to look at or consider the presentence investigation report. Evans v. Langlois, 99 R.I. 320,207 A.2d 380 (1965).
 "[T]here is nothing in the statute requiring the court do so. As the court said in Knowles v. Langlois, 90 R.I. 445, 447, `the sole purpose of the section is to aid the court in the exercise of its exclusive power to sentence and not to restrict or limit such power. On no reasonable view of its language does it. . . confer a new right in his favor in the nature of due process.'"
Evans v. Langlois, 99 R.I. 320, 207 A.2d 380 (1965). The transcript of the plea hearing, which is not the model of clarity, reveals that the trial justice, even though he was not required to do so, did refer to the presentence report while accepting Morris's plea.
A presumption of regularity attaches to final judgments, "even when the question is waiver of constitutional rights." Ouimette v. State,785 A.2d 1132, 1137 (R.I. 2001). As the Court stated in Evans, the presentence report statute did not create a new due process right for criminal defendants. Therefore, the trial justice was not obligated to mention the presentece report during the plea hearing.
Even if the trial justice did not consider Morris' presentence report, as Morris alleges, the issue is moot. When Morris signed his plea agreement, he waived any right he had to have the trial justice read Morris' presentence report. The plea agreement states that Morris waived his "right to have the Court obtain and consider a presentence report before the imposition of sentence by the Court." Waiver is defined as "when an accused intentionally abandons or relinquishes a known right."State v. Pacheco, 481 A.2d 1009, 1023 (R.I. 1984). The transcript reveals the following exchange between the Court and Morris:
 THE COURT: This form that you presented through your attorney, this request form, purports to have your signature on it. Is this your signature?
 MR. MORRIS: Yes, it is Your Honor.
 THE COURT: Have you read this form?
 MR. MORRIS: Yes, I have.
As mentioned earlier, the Court also advised Morris of the charge against him, of his right to trial by jury, of the State's burden of proof, his presumption of innocence, his privilege against self-incrimination, his right to confront and cross-examine the State's witnesses, his right to testify, and his right to appeal. By signing the plea agreement with the State, Morris agreed to waive all of his constitutional rights and his right to have the trial justice consider a presentence report before accepting Morris' plea.
 CONCLUSION
The Court finds that Applicant knowingly and willingly entered into his plea agreement with the State. Future exposure to enhanced criminal sentence constitutes a collateral consequence of which the trial justice was not duty bound to inform Applicant. The Court is satisfied that Applicant waived his right to have the trial justice consider a presentence report. Accordingly, Applicant's petition for post-conviction relief is hereby denied.
[1] See also, State v. Desir, 766 A.2d 374 (R.I. 2001) and State v. Alejo, 655 A.2d 692 (R.I. 1995) affirming Figueroa's holding that deportation is a collateral consequence beyond the direct authority of the trial justice.