UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 13-4279

————————

SOUTHERN TRACK & PUMP, INC., a Florida Corporation

v.

TEREX CORPORATION, doing business as
TEREX CONSTRUCTION AMERICAS,

Appellant

————————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-08-cv-00543)
Chief District Judge: Honorable Leonard P. Stark

————————

Argued on October 2, 2014

Before: AMBRO, CHAGARES, and VANASKIE, <u>Circuit Judges</u>

(Dated: June 30, 2015)

Ryan C. Cicoski, Esq.
Ericka Fredericks Johnson, Esq.
Womble, Carlyle, Sandridge & Rice
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

Virginia W. Hoptman, Esq.          (Argued)
Womble, Carlyle, Sandridge & Rice
8065 Leesburg Pike, 4th Floor
Tysons Corner, VA   22182
        *Counsel for Appellant*

Chaney Hall, Esq.
Greenberg Traurig
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801

Suzanne H. Holly, Esq.
Berger Harris
1105 N. Market Street, 11th Floor
Wilmington, DE 19801

Ryan M Murphy, Esq.
Peter J. Walsh, Jr., Esq.      (Argued)
Potter, Anderson & Corroon
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
        *Counsel for Appellee*

Mary Massaron-Ross, Esq.
Plunkett Cooney
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI   48304
        *Counsel for Amicus Appellant*

————————————

OPINION[*]

————————————

AMBRO, <u>Circuit Judge</u>

This matter came before our Court from a decision by the United States District Court for the District of Delaware. *See S. Track & Pump, Inc. v. Terex Corp.*, 852 F. Supp. 2d 456, 466–67 (D. Del. 2012).

Because this appeal raised an important and unsettled issue concerning the interpretation of Delaware's Equipment Dealer Contracts Statute, 6 Del. C. § 2720, *et*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

*seq.* (the "Dealer Statute"), we asked the Delaware Supreme Court to accept certification under Delaware Supreme Court Rule 41 and answer the following question of law.

> Does a supplier's repurchase obligation under § 2723(a) of the Dealer Statute extend to used inventory or is it limited to "new, unused, undamaged, and complete inventory" under § 2723(b)?

*S. Track & Pump, Inc. v. Terex Corp.*, No. 13-4279, Certification Order at 9 (3d Cir. Dec. 18, 2014). It accepted the certified question of law and issued a comprehensive opinion. *See Terex Corp. v. S. Track & Pump, Inc.*, --- A.3d ----, 2015 WL 3657593 (Del. June 15, 2015) (opinion appended hereto). For the reasons set forth by the Delaware Supreme Court, we hereby reverse the decision of the District Court and remand for proceedings consistent with the view of the Delaware Supreme Court that the repurchase obligation under § 2723(a) of the Dealer Statute extends only to "new, unused, undamaged, and complete inventory." *Id.* at *9.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TEREX CORPORATION, d/b/a TEREX CONSTRUCTION AMERICAS, | § § § § | No. 704, 2014 |
| | § § | Certification of Question of |
| Defendant-Appellant, | § | Law from the United States |
| | § | Court of Appeals for the |
| v. | § | Third Circuit |
| | § | |
| SOUTHERN TRACK & PUMP, INC., | § | C. A. No. 13-4279 |
| | § | |
| Plaintiff-Appellee. | § | |

Submitted:  April 15, 2015
Decided:  June 15, 2015

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices; **NOBLE**, Vice Chancellor,[*] and **GRAVES**, Judge,[*] constituting the Court *en Banc*.

Upon Certification of Question of Law from the United States Court of Appeals for the Third Circuit.  **CERTIFIED QUESTION ANSWERED**.

John C. Phillips, Jr., Esquire (*argued*), David A. Bilson, Esquire, Phillips, Goldman & Spence, P.A., Wilmington, Delaware; Virginia W. Hoptman, Esquire, Redmon Peyton & Braswell LLP, Alexandria, Virginia, for Defendant-Appellant.

Peter J. Walsh, Jr., Esquire (*argued*), Ryan M. Murphy, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware; Suzanne Hill Holly, Esquire, Berger Harris, LLC, Wilmington, Delaware, for Plaintiff-Appellee.

**VALIHURA**, Justice:

---

[*] Sitting by designation pursuant to Del. Const. art. IV, § 12.

A dispute pending before the United States Court of Appeals for the Third Circuit (the "Third Circuit") turns on the interpretation of Delaware's Equipment Dealer Contracts Statute, 6 *Del. C.* § 2720, *et seq.* (the "Dealer Statute"). To assist the Third Circuit in resolving this dispute, the Third Circuit certified the following question of law to this Court:

> Does a supplier's repurchase obligation under § 2723(a) of the Dealer Statute extend to used inventory or is it limited to "new, unused, undamaged and complete inventory" under § 2723(b)?

As more fully explained below, we answer the certified question of law by concluding that a supplier's repurchase obligation under the Dealer Statute is limited to new, unused, undamaged, and complete inventory.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

In April 2007, Southern Track & Pump, Inc. ("Southern Track"), a Florida-based equipment dealership that sells and leases construction equipment, entered into a distributorship agreement with Terex Corporation ("Terex"), a Delaware corporation that manufactures construction equipment. Under the distributorship agreement, which was governed by Delaware law, Southern Track purchased from Terex approximately $4 million worth of equipment (about forty pieces in total) and $50,000 worth of parts. Southern Track financed its purchase through an

---

[1] This statement of facts is drawn from the Third Circuit's petition to certify a question of law to this Court. *See S. Track & Pump Inc. v. Terex Corp.*, No. 13-4279 (3d Cir. Dec. 18, 2014). We treat these facts as undisputed for the purposes of deciding this legal issue. *See Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1021 (Del. 2001).

arrangement with GE Commercial Distribution Finance Company ("GE"). The financing was secured by the equipment Southern Track purchased from Terex using funds provided by GE.

Southern Track had difficulty marketing Terex products. When its loan obligations to GE became too onerous, Southern Track decided to terminate the distributorship agreement. In its termination letter, Southern Track indicated that it wanted to keep some equipment, but it wanted Terex to repurchase everything else. The purported impetus behind the decision to terminate was Southern Track's assumption that the Dealer Statute's repurchase obligation would force Terex to repurchase all of the inventory Terex had previously sold to Southern Track that Southern Track did not wish to retain.[2]

Terex disagreed. Terex contended that the Dealer Statute required a supplier to repurchase only new and unused equipment. Terex argued that since most, if not all, of the equipment it sold to Southern Track had entered Southern Track's rental fleet, the equipment was used. Terex asked Southern Track to compile a list of the new and unused equipment Southern Track had in its inventory. Instead of complying with that request, Southern Track sent Terex a letter in June 2008 that

---

[2] *See* 6 *Del. C.* § 2722(a) (providing that the termination of a contract agreement "by either party" triggers the supplier's obligation to "repurchase the dealer's inventory as provided in this subchapter unless the dealer chooses to keep the inventory"); 6 *Del. C.* § 2723(a) (providing that "[t]he supplier shall repurchase from the dealer within 90 days after termination of the contract agreement all inventory previously purchased from the supplier that remains unsold on the date of termination of the agreement").

identified seventeen pieces of equipment that it wanted Terex "to come and pick up."  Over half of those items had been in operational use for 175 to 300 hours. Yet Southern Track insisted that Terex was required to purchase the equipment at brand new prices.

After some back and forth, Terex offered to repurchase nine of the seventeen pieces of equipment listed in Southern Track's June 2008 letter.[3]  Terex offered to pay market value for the equipment, but reserved the right to take a deduction for any parts or repair services "required to return any of the repurchased equipment to good running and operating condition."

As negotiations between the parties progressed, Southern Track was under increasing pressure from GE to make past-due payments or risk losing possession of the equipment it had purchased from Terex.  With GE's threat looming, and with no sign that the parties were close to resolving their differences, Southern Track filed a declaratory judgment action against Terex in the Delaware Superior Court on July 23, 2008.  One day later -- and one month before the expiration of the Dealer Statute's ninety-day repurchase period -- GE took possession of all of the equipment Southern Track had purchased from Terex.  GE later sold most of this equipment at auction.

---

[3] After conducting discovery, it was revealed that seven of the nine pieces of equipment Terex offered to repurchase were new. *See S. Track & Pump Inc. v. Terex Corp.*, 852 F.Supp.2d 456, 466-67 (D. Del. 2012).

3

Terex removed the lawsuit to the United States District Court for the District of Delaware based on diversity jurisdiction. Southern Track's second amended complaint alleged, in relevant part, that Terex had violated the Dealer Statute when it failed to repurchase "*all* inventory previously purchased [from it] . . . that remain[ed] unsold on the date of the termination of the agreement."[4] As a result of the alleged breach, Southern Track claimed that it was entitled to the relief prescribed by § 2727(a) of the Dealer Statute, namely, that Terex was "civilly liable for 100% of the 'current net price' of the inventory" plus other associated costs and fees.[5]

The parties filed cross-motions for summary judgment in the District Court. The principal issue was whether a supplier's repurchase obligation under § 2723(a) extends to all inventory in a dealer's possession that remains unsold, or only applies to inventory that remains in new and unused condition. The District Court held that § 2723(a) required suppliers to repurchase *all* -- not just new and unused -- inventory. Thus, it held that Terex's actions ran afoul of the Dealer Statute because Terex offered to repurchase only the new and unused equipment. The District Court granted Southern Track's motion for summary judgment and ordered Terex to pay the full price of all inventory it had sold to Southern Track

---

[4] 6 *Del. C.* § 2723(a) (emphasis added).

[5] 6 *Del. C.* § 2727(a).

4

that remained unsold on the date of the termination of the distributorship agreement (which amounted to approximately $4.35 million).

Terex appealed the District Court's judgment to the Third Circuit. The Third Circuit, having considered the submissions of the parties and having heard oral argument, petitioned for certification to this Court. Pursuant to Article IV, Section 11(8) of the Delaware Constitution and Delaware Supreme Court Rule 41, we agreed to decide this question of law since it raises an important and unsettled issue concerning the interpretation of Delaware's Dealer Statute. As this is a pure question of law, we exercise *de novo* review.[6]

## II.    ANALYSIS

### A.    Background of the Dealer Statute

Dealer statutes were enacted to address an imbalance of economic power that often exists between suppliers and dealers.[7] As the Third Circuit observed, as a condition of sale, and as a result of their superior bargaining power, suppliers generally impose a minimum quantity purchase obligation. This requirement "puts dealers in a tough position: in an unfavorable business climate it can be difficult to

---

[6] *See, e.g.*, *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex rel. Christiana Bank and Trust Co.*, 28 A.3d 1059, 1064 (Del. 2011).

[7] *See, e.g.*, *FMS, Inc. v. Volvo Const. Equip. N.A., Inc.*, 557 F.3d 758, 761 (7th Cir. 2009) ("the purpose of state franchise and dealership laws 'is to protect franchisees who have unequal bargaining power once they have made a firm-specific investment in the franchisor.'" (quoting *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 135 (7th Cir. 1990))).

move the equipment off their showroom floor."[8]  Delaware's Dealer Statute sets forth a statutory scheme that embodies policy choices made by our legislature in an attempt to balance the interests of dealers and suppliers, maintain the freedom to enter into contracts, and regulate certain aspects of the dealer franchise industry. The Dealer Statute addresses the imbalance of power between dealers and suppliers by including a mandatory repurchase obligation in 6 *Del. C.* § 2722(a), which provides that "[w]henever a contract agreement between a dealer and a supplier is terminated by either party, the supplier shall repurchase the dealer's inventory as provided in this subchapter unless the dealer chooses to keep the inventory."[9]

The Dealer Statute itself does not distinguish between new and used equipment in those precise terms setting forth the repurchase obligation.  Instead, § 2723(a) provides that "[t]he supplier shall repurchase from the dealer within 90 days after termination of the contract agreement *all inventory* previously purchased from the supplier *that remains unsold* on the date of termination of the agreement."[10]  Thus, the Third Circuit has requested that we determine whether the

---

[8] *See S. Track & Pump Inc. v. Terex Corp.*, No. 13-4279 (3d Cir. Dec. 18, 2014) (order certifying a question of law to the Delaware Supreme Court).

[9] 6 *Del. C.* § 2722(a).

[10] 6 *Del. C.* § 2723(a) (emphasis added).

6

Dealer Statute's use of the term "all inventory" means that a supplier must repurchase both new and used equipment.

### B. The Parties Dispute the Correct Interpretation of the Dealer Statute

As the Third Circuit acknowledged, "§ 2723(a) can be read in one of two ways, each of which has its problems."[11]  Southern Track advocates that the term "all inventory" in § 2723(a) should be construed according to its plain meaning, namely, that "all" means all.  Further, "Inventory" is defined broadly as "tractors, implements, attachments, equipment and repair parts that the dealer purchased from the supplier."[12]  Thus, Southern Track contends that § 2723(a) does not limit a supplier's obligation to repurchase inventory to new and unused equipment when that equipment remains unsold after an agreement between a supplier and retailer is terminated.  Any other construction of the statute, Southern Track argues, would render the modifier "all" superfluous.

Although Southern Track maintains that this provision is clear on its face, Terex points out that the § 2723(b) provides a repurchase price only for new inventory.  Section 2723(b) provides:

The supplier shall pay the dealer:

(1) One hundred percent of the net cost of *all new, unused, undamaged and complete inventory except repair parts*, less a

---

[11] *S. Track & Pump, Inc.*, C.A. No. 13-4279, at *8 (3d Cir. Dec. 18, 2014).

[12] 6 *Del. C.* § 2720(5).

7

> reasonable allowance for deterioration attributable to weather conditions at the dealer's location.
>
> (2) Eighty-five percent of the current net price of *all new, unused and undamaged repair parts* that are currently listed in the supplier's price book.  The supplier may perform the handling, packing and loading of repair parts returned and withhold 5 percent of the current net price of the repair parts returned for their services.[13]

The Dealer Statute contains no provision, and thus is silent, as to a price for *used* inventory.

The District Court determined that the parties must set the price for used inventory themselves:  "inventory that is not new, unused, or undamaged remains subject to the repurchase requirement, but at a price subject to negotiation by the parties instead of the prices set forth by statute."[14]  The Third Circuit characterized this as "one possible remedy," but was "uncertain that it reflects the Delaware General Assembly's intent."[15]  Terex contends that this judicially created gap-filler has no basis in the statute or its history.

Similarly, Terex notes that the synopsis to the House Bill that enacted the Dealer Statute provides that the Act was intended to cover dealers of new equipment only.  It provides:

> This is an Act relating to contract agreements between *dealers engaged in the business of retailing new* construction, farm, industrial,

---

[13] 6 *Del. C.* § 2723(b) (emphasis added).

[14] *S. Track & Pump, Inc. v. Terex Corp.*, 852 F. Supp. 2d 456, 466 (D. Del. 2012).

[15] *S. Track & Pump, Inc.*, C.A. No. 13-4279, at *8 (3d Cir. Dec. 18, 2014).

8

and outdoor power *equipment*; and wholesalers, manufacturers, or distributors of their products:  To require repurchase of inventory from dealers upon termination of a contract agreement:  to provide procedures to establish limitations, rights, and civil liabilities relative to repurchase:  To extend the right to require repurchase option to the heirs of dealers:  and to provide prompt resolution of warranty claims upon termination.[16]

Moreover, Terex argues that the District Court's solution creates a new problem.  Section 2727 sets out remedies for a supplier's failure to repurchase inventory, including:

If a supplier fails or refuses to repurchase any inventory covered under this subchapter within the time periods established, the supplier is civilly liable for *100% of the "current net price" of the inventory*, plus the amount the dealer paid for freight costs from the supplier's location to the dealer's location, plus reasonable cost of assembly performed by the dealer, and plus the dealer's reasonable attorney's fees and court costs, and interest on the "current net price" of the inventory computed at the legal rate of interest, but not to exceed 18% annual percentage rate, from the ninety-first day after termination of the contract agreement.[17]

As Terex argues, and the Third Circuit posited, it seems illogical to expect parties to negotiate over price when "if they fail to reach an agreement, the supplier must pay 100% of the current net price of the inventory under 6 *Del. C.* § 2727(a)."[18]

---

[16] Del. H. B. 41 syn., 134th Gen. Assem., 66 Del. Laws ch. 173 (1987) (emphasis added).

[17] 6 *Del. C.* § 2727(a) (emphasis added).

[18] *S. Track & Pump, Inc.*, C.A. No. 13-4279, at *8-9 (3d Cir. Dec. 18, 2014).  Terex argues that the qualifier "remains unsold" is also important because it excludes inventory put into the rental stream.  Equipment that has been rented may not be available for purchase by a buyer because renters may have contractual rights to the equipment for the rental term.

9

### C.    The Dealer Statute is Ambiguous, But Reading the Text as a Whole Favors One Interpretation

"The goal of statutory construction is to determine and give effect to legislative intent."[19]  At the outset, a court must determine whether the provision in question is ambiguous.  "Statutory construction . . . is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme -- because the same terminology is used elsewhere in a context that makes its meaning clear . . . or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law. . . ."[20]

A statute is ambiguous if "it is reasonably susceptible of different conclusions or interpretations" or "if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature."[21]  An ambiguous statute should be construed "in a way that will promote its apparent

---

[19] *Delaware Bd. of Nursing v. Gillespie*, 41 A.3d 423, 427 (Del. 2012) (quoting *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007); *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).

[20] *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted).

[21] *LeVan*, 940 A.2d at 933 (quoting *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 175 (Del. 2001)); *see also Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Memorial Hosp., Inc.*, 36 A.3d 336, 342 (Del. 2012).

purpose and harmonize it with other statutes" within the statutory scheme.[22] All of

the pertinent statutory language should be given full effect to produce the most

consistent and harmonious result under the wording of the section.[23]

When a statute is silent on a particular matter, the otherwise detailed nature

of the statute in other respects can be significant. Moreover, the fact that other

similar statutes may have opted to address that particular matter explicitly might be

instructive.[24] For example, we note that unlike Delaware, many other states

expressly distinguish between new and used equipment in addressing the

repurchase obligation,[25] and several states explicitly address equipment that has

---

[22] *LeVan*, 940 A.2d at 933 (quoting *Eliason*, 733 A.2d at 946).

[23] *Nationwide Ins. Co. v. Graham*, 451 A.2d 832, 834 (Del. 1982) (citing *Martin v. American Potash & Chemical Corp.*, 92 A.2d 295 (Del. 1952); *Nationwide Mut. Ins. Co. v. Krongold*, 318 A.2d 606 (Del. 1974)).

[24] It is not uncommon for Delaware courts to consider the policy rationale supporting similar statutes from other states. *See Hudson Farms, Inc. v. McGrellis*, 620 A.2d 215, 218 (Del. 1993) ("[P]reexisting law and similar statutes from other jurisdictions which deal with comparable situations can be used as extrinsic aids in construing the legislature's intent."); *Bateman v. 317 Rehoboth Ave., LLC*, 878 A.2d 1176, 1182 (Del. Ch. 2005), *aff'd*, 889 A.2d 283 (Del. 2005) (observing that although it is not unusual in Delaware to find no legislative history on the policy considerations underlying the General Assembly's enactment of a particular statute, where the statute is a "common provision" across state legal codes, "it is inferable that the General Assembly enacted [the statute] to serve the same general purposes recognized in American jurisprudence as animating other similar statutes from other states," and it is appropriate to "consider the public policy purposes that [these] statutes are generally created to address"). Yet reasoning by analogy to case law developed in other jurisdictions must be a cautious enterprise where it is unclear whether those jurisdictions have made the same policy choices. *See Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 142 & n.1 (7th Cir. 1990) (Ripple, J., dissenting) (commenting on "dealing with the black hole of legislative ambiguity" and noting that, "[a]s a practical matter, this process of reasoning by analogy often is flawed by overdependence on the law of other jurisdictions within the circuit").

[25] Certain states expressly address equipment that was used by the dealer or used for demonstration purposes. *See, e.g.*, Ariz. Rev. Stat. Ann. § 44-6705; Cal. Bus. & Prof. Code

11

been leased or rented.[26]    Where, as here, the Dealer Statute sets forth a specific and detailed statutory scheme, it would be incongruous to create statutory gaps and apply judicial fillers when an alternative, equally compelling statutory construction does not require us to do so.[27]

A supplier's obligation to repurchase inventory from a dealer is set forth in § 2722.  Section 2722(a) provides that "[w]henever a contract agreement between a dealer and a supplier is terminated by either party, the supplier shall repurchase the dealer's inventory *as provided in this subchapter* unless the dealer chooses to keep the inventory."[28]    The issue we confront is whether "inventory as provided by this

§ 22905; Colo. Rev. Stat. Ann. § 35-38-106; Fla. Stat. Ann. § 686.606; Idaho Code Ann. § 28-23-101; Iowa Code Ann. § 322F.3; Ky. Rev. Stat. Ann. § 365-805; La. Rev. Stat. Ann. § 51:484; Md. Code Ann. Com. Law § 19-202; Mich. Comp. Laws Ann. § 445.1454; Miss. Code Ann. § 75-77-4; N.Y. Gen. Bus. Law § 696-f; Nev. Rev. Stat. Ann. § 597.1153; N.C. Gen. Stat. Ann. § 66-184; Okla. Stat. Ann. tit. 15, § 246; Or. Rev. Stat. Ann. § 646A.304; Pa. Cons. Stat. Ann. § 205-4; Tenn. Code Ann. § 47-25-1305; Tex. Bus. & Com. Code Ann. § 57.353; Utah Code Ann. § 13-14a-2; Va. Code Ann. § 59.1-352.5; Wyo. Stat. Ann. § 40-20-120.

[26] Several states have dealer statute that explicitly discuss equipment that has been leased or rented.  *See, e.g.*, Conn. Gen. Stat. Ann. § 42-348; Iowa Code Ann. § 322F.3; Ky. Rev. Stat. Ann. § 365-805; Me. Rev. Stat. Ann. tit. 10, § 1289; Mass. Gen. Laws Ann. ch. 93G, § 4; Md. Code Ann. Com. Law § 19-202; Mich. Comp. Laws Ann. § 445.1454; Miss. Code Ann. § 75-77-4; Nev. Rev. Stat. Ann. § 597.1153; N.C. Gen. Stat. Ann. § 66-184; Ohio Rev. Code Ann. § 1353.02; Or. Rev. Stat. Ann. § 646A.304; R.I. Gen. Laws § 6-46-5; Tenn. Code Ann. § 47-25-1305; Utah Code Ann. § 13-14a-2; Vt. Stan. Ann. tit. 9, § 4074; Va. Code Ann. § 59.1-352.5.

[27] *See Pickett v. United States*, 216 U.S. 456, 460 (1910) ("No construction should be adopted, if another equally admissible can be given, which would result in what might be called a judicial chasm.").  Justice Scalia once aptly commented that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

[28] 6 *Del. C.* § 2722(a) (emphasis added).  The "subchapter" referred to is Subchapter III of Title 6, Subtitle II, Chapter 27, entitled "Equipment Dealer Contracts."  It contains the following eight sections:   § 2720 ("Definitions"); § 2721 ("Notice of termination of contract agreements");

12

subchapter" in § 2722 is modified by the term "all inventory" in § 2723(a), or alternatively, the pricing provisions in § 2723(b)(1) and (b)(2) -- which include terms for new, unused, undamaged, and complete inventory, but omit any reference to used equipment or inventory that has entered a dealer's rental fleet. As more fully explained below, we conclude that a supplier's repurchase obligation under the Dealer Statute is limited to new, unused, undamaged and complete inventory, consistent with the statutory scheme, the canon of avoiding unnecessary statutory gap-filling, and our preference to avoid interpretations that could invite constitutional entanglements.

Reading the statute to require suppliers to repurchase only new inventory, as Terex urges, avoids judicially filling a gap in what is otherwise a detailed statutory scheme. Section 2723(b) sets out two pricing formulas, one for "all new, unused, undamaged and complete inventory except repair parts,"[29] and one for "all new, unused and undamaged repair parts."[30] As noted above, the statute is silent on the price for inventory that is not "new, unused, undamaged and complete."

Without any textual support to guide it, the District Court attempted to fill the statutory silence by crafting its own requirement, namely, that parties must

---

§ 2722 ("Supplier's requirement to repurchase"); § 2723 ("Repurchase terms"); § 2724 ("Exceptions to repurchase requirements"); § 2725 ("Uniform commercial practice"); § 2726 ("Warranty claims"); and § 2727 ("Civil remedy for failure to repurchase").

[29] 6 *Del. C.* § 2723(b)(1).

[30] 6 *Del. C.* § 2723(b)(2).

negotiate the price of used inventory themselves.[31]   But this requirement, which has no basis in the text itself, leads to the incongruous result the Third Circuit emphasized in its order certifying the question of law:  why would a dealer accept a reduced price if it knows it can get the "current net price" of equipment -- plus all costs and attorney's fees -- if negotiations break down?[32]

Viewing the Dealer Statute as a whole suggests that the legislature was intentionally silent.  The Dealer Statute is a detailed piece of legislation.  For example, it provides allowances for "weather conditions at the dealer's location,"[33] stipulates the price reduction available for suppliers who perform "the handling, packing and loading of repair parts,"[34] and states that "inventory shall be returned FOB to the dealership."[35]   A requirement that used equipment must also be repurchased would be a matter of fundamental significance in this statutory scheme.  It is inconsistent with the statute's overall level of detail to infer by the legislature's silence that it intended to require the repurchase of used equipment.

---

[31] *S. Track & Pump, Inc. v. Terex Corp.*, 852 F. Supp. 2d 456, 466 (D. Del. 2012).

[32] *See* 6 *Del. C.* § 2727(a).  Although Southern Track now asserts that the Dealer Statute does not require the supplier to pay the same statutory price for used equipment as for new equipment, that was not its claim originally in the District Court.  Its inconsistent position highlights the problematic bargaining position the supplier faces if we read the statute to impose a repurchase obligation without a corresponding statutory pricing formula.

[33] 6 *Del. C.* § 2723(b)(1).

[34] 6 *Del. C.* § 2723(b)(2).

[35] 6 *Del. C.* § 2723(c).

That is especially the case since the General Assembly can be presumed to have understood the heavy construction equipment industry, including the relationship between suppliers and dealers covered by the Dealer Statute.[36]  If the General Assembly understood that dealers typically use equipment in their rental fleets, thereby rendering them not "new, unused, undamaged and complete," they could have included a pricing formula for that equipment as well.  That they chose not to suggests that we should decline to supply the alleged omission.[37]

Further, this reading also makes sense of other provisions in the statute.  As noted, § 2722(a) states that the "supplier shall repurchase the dealer's inventory as provided in this subchapter unless the dealer chooses to keep the inventory."  The only repurchase terms that are provided in the subchapter relate to new, unused, undamaged, and complete inventory because the statute does not provide a pricing formula for used equipment.  Given that there can be no repurchase transaction without a price, this provision also suggests that the General Assembly did not intend to require the supplier to repurchase used equipment.

---

[36] *See, e.g.*, *Chicago, M. & St. P. Ry. Co. v. Tompkins*, 176 U.S. 167, 173 (1900) ("It is often said that the legislature is presumed to act with full knowledge of the facts upon which its legislation is based.").

[37]  *Cf. Trader v. Jester*, 1 A.2d 609, 612 (Del. Super. 1938) ("Courts proceed with great caution in supplying alleged omissions, and they will supply them only where the intent to have the statute so read is plainly verifiable from the other parts of the statute, as, for example, where the ordinary interpretation would lead to consequences so mischievous and absurd that it is clear that the Legislature could not have so intended.").

15

A comparison to the Delaware Motor Vehicle Franchise Statute, 6 *Del. C.* § 4901, *et seq.* (the "MVFS") -- adopted in 1983, four years before the passage of the Dealer Statute -- is instructive.[38] The MVFS requires a manufacturer to repurchase "at dealer cost" "any new, unused, undamaged and unmodified motor vehicles with less than 750 miles registered on the odometer that the dealer has acquired from the manufacturer or distributor"[39] if the agreement between the two is terminated. If termination of a dealer's franchise is the result of the cessation of a "line-make" by a manufacturer, then, in addition to payment of termination assistance, the dealer is entitled to be paid "an amount at least equivalent to the fair market value of the franchise for the line-make. . . ."[40] The MVFS establishes a specific procedure for determining the fair market value of the franchise:

> Fair market value shall only include the value of the dealer's franchise for that line-make in the dealer's relevant market area. . . . Upon the dealer's written notice to the manufacturer that the dealer seeks compensation pursuant to this section, the affected dealer and the affected manufacturer shall each select a business valuation appraiser, certified public accountant, or other person that performs business valuations as a part of their occupation. . . . If the difference in valuation as determined by the respective valuators is within 10%, then the valuations shall be averaged and the average of the 2 valuations shall constitute fair market value for the purposes of this provision. If the difference in valuation as determined by the respective valuators is greater than 10%, then the chosen valuators shall select a third valuator by mutual agreement. . . . The third

---

[38] 64 Del. Laws ch. 27, §1 (1983).

[39] 6 *Del. C.* § 4907(1).

[40] 6 *Del. C.* § 4907(5).

16

valuator's determination shall be the fair market value for the purposes of this provision unless the valuator's determination is within 25% of either the dealer or manufacturer's valuation.  In that instance the valuator's determination shall be averaged with the determination that is within 25% of and that average shall be the fair market value for the purposes of this section.[41]

The MVFS's intricate procedural framework for calculating the fair market value of the franchise for the "line-make" suggests that when the General Assembly intends for parties to negotiate a "fair market value," it does so explicitly.  Because the Dealer Statute is silent as to how to price inventory that is not "new, unused, undamaged, and complete," it is logical to infer that the General Assembly did not intend for such inventory to be included in the repurchase requirement, with the parties (or courts) then left to devise their own formulas and procedures to determine the value of such inventory.[42]

The same conclusion also harmonizes the difference between the Delaware Dealer Statute and the dealer statutes that exist in a number of other states.  The Third Circuit characterized Delaware's statute as "unique" because it does not

---

[41] 6 *Del. C.* § 4907(5).

[42] *See City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338 (1994) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("'[I]t is generally presumed that Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another.'")).  Moreover, given that the synopsis states that the purpose of the Dealer Statute is to, among other things, "provide *procedures* to establish limitations, rights, and civil liabilities relative to repurchase," it is significant that no procedures were set forth regarding the purchase of used inventory.  Del. H. B. 41 syn., 134th Gen. Assem., 66 Del. Laws ch. 173 (1987) (emphasis added).

explicitly deal with used equipment.[43]  Dealer statutes in several states provide for

the repurchase of equipment that is not "new, unused, undamaged and complete"

or that has been used in the dealer's rental fleet, and set the repurchase price at the

"average as-is value shown in current industry guides."[44]  The absence of a similar

provision in Delaware's Dealer Statute suggests that the omission is intentional.[45]

The reference to "current net price" in the section of the Dealer Statute

addressing civil penalties also supports our reading of the Dealer Statute.[46]  For

example, if the supplier does not repurchase the equipment within 90 days, the

remedy provided by the statute is the "current net price of the inventory," plus

freight, assembly, attorney's fees, court costs, and interest.[47]  "Current net price" is

defined as "the price listed in the supplier's price list in effect at the time the

---

[43] Reply Br., Exh. C. at 4 (Tr. Oral Argument, Oct. 2, 2014).

[44] *See, e.g.*, Conn. Gen. Stat. Ann. § 42-348; Me. Rev. Stat. Ann. tit. 10, § 1289; Mass. Gen. Laws Ann. ch. 93G, § 4; Ohio Rev. Code Ann. § 1353.02; R.I. Gen. Laws § 6-46-5; Vt. Stan. Ann. tit. 9, § 4074.

[45] But we note that the General Assembly could have been more clear, for example, by expressly *excluding* the repurchase requirement for inventory that is not new, unused or undamaged, as many states have done.  *See, e.g.*, Ala. Code § 8-21A-6; Ark. Code Ann. § 4-72-307; Ga. Code Ann. §13-8-22; Ind. Code § 15-12-3-14; Kan. Stat. Ann. § 16-1003; Mo. Ann. Stat. § 407.870; Mont. Code Ann. § 30-11-703; Neb. Rev. Stat. Ann. § 87-707; S.C. Code Ann. § 39-59-50. Further, certain states have dealer statutes that provide for the repurchase of equipment that has been used by the dealer, used for demonstration or lease; yet these statutes still exclude from the repurchase requirement inventory that is not new, unused or undamaged.  *See, e.g.*, Ariz. Rev. Stat. Ann. § 44-6705; Cal. Bus. & Prof. Code § 22905; Colo. Rev. Stat. Ann. § 35-38-106; Fla. Stat. Ann. § 686.606; Ky. Rev. Stat. Ann. § 365-820; Md. Code Ann. Com. Law § 19-203; Miss. Code Ann. § 75-77-9; N.Y. Gen. Bus. Law § 696-f; N.C. Gen. Stat. Ann. § 66-185; Okla. Stat. Ann. tit. 15, § 247; Pa. Cons. Stat. Ann. § 205-4; Tenn. Code Ann. § 47-25-1307; Tex. Bus. & Com. Code Ann. § 57.358; Va. Code Ann. § 59.1-352.6; Wyo. Stat. Ann. § 40-20-121.

[46] *See* 6 *Del. C.* §§ 2720(2)-(3), 2722(c), 2723(b)(2), and 2727(a) (emphasis added).

[47] 6 *Del. C.* § 2727(a).

contract agreement is terminated, less any applicable discount allowed."[48]  Thus, as

long as the supplier's price has remained constant, the dealer is made whole.  The

dealer does not receive a windfall from the supplier's repurchase, but is instead

returned to the position that it was in before the agreement was entered.  At the

same time, the only "penalty" imposed on the supplier in that instance is the

obligation to pay freight, assembly, attorney's fees, court costs, and interest.  This

concept of a statutory balance between the supplier and dealer is consistent with

how other courts have viewed similar dealer statutes.[49]

Nor does this construction of the Dealer Statute render the term "all" in

§ 2723(a) superfluous, as Southern Track suggests.  Rather, one reasonable

interpretation is that "all" modifies inventory "that remains unsold."  Put

differently, a supplier is obligated to repurchase all new, unused, undamaged, and

complete inventory in accordance with the Dealer Statute.  A supplier may not

choose to repurchase only a subset of equipment that otherwise qualifies to be

---

[48] 6 *Del. C.* § 2720(3).

[49] *See Town & Country Equip., Inc. v. Massey-Ferguson, Inc.*, 808 F. Supp. 779, 781 (D. Kan. 1992) (holding that Kansas' dealer statute "strikes a balance between the interests of the wholesaler and those of the retailer. . . .  The clear purpose of the repurchase statute is to facilitate the liquidation of farm equipment and repair parts upon termination of a franchise. Because the wholesaler has required the retailer to maintain a stock of its inventory, it is fair to require the wholesaler to repurchase its merchandise upon termination of the franchise.  This disadvantage to the wholesaler is offset by the wholesaler's regaining title to the merchandise upon payment").

repurchased (namely, the new, unused, undamaged inventory); it must repurchase *all* such inventory at the dealer's option.[50]

Finally, interpreting the statute in this way avoids having to reach the question of whether the statute is punitive in nature, and whether it presents an unconstitutional taking.[51] There is a "'strong judicial tradition in Delaware' that supports a 'presumption of the constitutionality of a legislative enactment.'"[52] "[W]here a possible infringement of a constitutional guarantee exists, the interpreting court should strive to construe the legislative intent so as to avoid unnecessary constitutional infirmities."[53] Accordingly, our construction of the Dealer Statute avoids the question of whether civil penalties for failure to repurchase inventory from a dealer amount to a taking in violation of the Takings Clause of the United States Constitution.

---

[50] *See* 6 *Del. C.* § 2722(a) ("Whenever a contract agreement between a dealer and a supplier is terminated by either party, the supplier shall repurchase the dealer's inventory as provided in this subchapter *unless the dealer chooses to keep the inventory.*" (emphasis added)).

[51] Terex contends that requiring it to compensate Southern Track for used equipment at like-new prices, especially when most of the equipment has already been repossessed, could constitute an unconstitutional taking. It cites *Globe Liquor Co. v. Four Roses Distillers Company*, 281 A.2d 19 (Del. 1971), *cert. denied*, 404 U.S. 873 (1971), for the proposition that when a statute imposes damages without regard to actual loss, it imposes a punitive remedy; "[a]s such, they are the taking of private property without compensation and without due process of law." *Id.* at 24.

[52] *State v. Baker*, 720 A.2d 1139, 1144 (Del. 1998) (quoting *Snell v. Engineered Systems & Designs, Inc.*, 669 A.2d 13, 17 (Del. 1995)).

[53] *Richardson v. Wile*, 535 A.2d 1346, 1350 (Del. 1988); *see also Kaisershot v. Gamble-Skogmo, Inc.*, 96 N.W.2d 666, 672 (N.D. 1959) ("Courts will not pass upon the constitutionality of an act unless a decision upon that very point is absolutely necessary for a determination of the case before it.").

## III.   CONCLUSION

Based on the foregoing, the question of law certified to this Court by the United States Court of Appeals for the Third Circuit is answered as follows:  a supplier's repurchase obligation under § 2723(a) of the Dealer Statute is limited to new, unused, undamaged, and complete inventory.