# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOHN P. MCCAFFERTY,      )
                             )
      Petitioner,           )
                             )
      v.                 )     C.A. No. N20A-10-001 JRJ
                             )
NEW CASTLE COUNTY BOARD  )
OF LICENSE, INSPECTION AND  )
REVIEW and NEW CASTLE     )
COUNTY CODE ENFORCEMENT  )
OFFICER CHRISTOPHER YASIK,  )
                             )
      Respondents.       )
                             )

## MEMORANDUM OPINION

Submitted: February 15, 2021
Decided: April 26, 2021

*Upon John P. McCafferty's Writ of* Certiorari *from the Decision of the Board of License, Inspection and Review*: **AFFIRMED**.

John P. McCafferty, Claymont, Delaware, *Pro se*.

Jordan Perry, Esquire, 87 Reads Way, New Castle, DE 19720, Attorney for Respondents.

**Jurden, P.J.**

# I. INTRODUCTION

On two separate occasions, Respondent Christopher Yasik ("Officer Yasik"), a New Castle County code enforcement officer, cited Petitioner John P. McCafferty for storing debris in a manner that violated the New Castle County Property Maintenance Code. The second citation is at issue here. McCafferty appealed that citation to the New Castle County Department of Land Use (the "Division"). An Administrative Hearing Officer upheld the citation. McCafferty then appealed to Respondent New Castle County Board of License, Inspection & Review (the "Board"), which also upheld the citation. McCafferty's case is now before the Court on *certiorari* review. McCafferty asserts a host of constitutional objections to the substance and procedure of the Division's code-enforcement system. For the reasons stated below, the Board's decision is **AFFIRMED**.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The First Citation

In September 2019, the Division received an anonymous complaint that there were rats on three parcels of residential property.[1] One of these parcels belongs to McCafferty.[2] Officer Yasik arrived at McCafferty's property to investigate the

---

[1] *See* R038. "R" citations refer to pages of the Record and Transcript. (Trans. ID. 66114436).
[2] *Id.*

2

complaint.[3] Although Officer Yasik did not find any rats, he did find a storage of debris on the property that violated the Property Maintenance Code.[4]

On November 12, 2019, Officer Yasik cited McCafferty for the debris violation.[5] McCafferty appealed that citation to an Administrative Hearing Officer.[6] At the December 2019 hearing, McCafferty argued that Officer Yasik's photographs were illegally obtained—and therefore inadmissible—because they appeared to have been taken from somewhere inside of the fence that surrounds McCafferty's yard.[7] The Administrative Hearing Officer could not determine from the photographs whether Officer Yasik had, in fact, been on McCafferty's property.[8] Faced with this uncertainty, the Administrative Hearing Officer dismissed the citation without prejudice on December 19, 2019.[9]

## B.     The Second Citation

Officer Yasik's computer system did not register the decision as a definitive ruling as to whether the debris violated the Property Maintenance Code.[10] For that

---

[3] *Id.*
[4] R036. The "Property Maintenance Code" is Chapter 7 of the New Castle County Code.
[5] *See* Petition Opening Brief ("Opening Brief"), Exhibit A (Trans. ID. 66223306).
[6] *Id.*
[7] *Id.*
[8] *Id.* ("Even though Mr. McCafferty claims that the photographs were taken from his back yard, it is unclear to this hearing officer based off the photographs presented where these photographs were actually taken.").
[9] *See id.*
[10] R038

reason, McCafferty's case remained open.[11]   Eventually, the computer system prompted Officer Yasik to return to McCafferty's property, which he did on January 16, 2020.[12]   When he arrived, Officer Yasik again noticed debris on the property.[13] Officer Yasik photographed the debris while standing in the yard of one of McCafferty's neighbors.[14]   On January 17, 2020, Officer Yasik issued McCafferty a second citation.[15]

On January 30, 2020, McCafferty appealed the second citation to the Department.[16]   On February 18, 2020, the Department held a hearing.[17]   At the hearing, McCafferty argued that Officer Yasik did not have permission to enter his neighbor's yard, so the photographs that Officer Yasik took from that location were inadmissible.[18]   McCafferty also argued that the first citation had been dismissed because the photographs supporting it were taken from an illegal vantage point (i.e.,

---

[11] *Id.*

[12] *Id.*

[13] *Id.*   Officer Yasik did not know whether this debris was the same debris that he had encountered before, but he determined that this debris violated the Property Maintenance Code regardless. R039.   Officer Yasik also saw a vehicle that violated the Property Maintenance Code on McCafferty's property; the Court does not address that violation because McCafferty did not challenge it on appeal.   *See* R022 ("Mr. McCafferty testified that he is not contesting the inoperable/unregistered vehicles violation.").

[14] R038.

[15] R003–005.   The section governing the debris violation provides, "Except during active construction the outside storage or accumulation of debris, including but not limited to, garbage, trash, rubbish, refuse, rock, rubble, broken concrete, piping and other building materials, wood, (excluding stacked firewood), tires or automobile parts (irrespective of age or condition), is prohibited in any residential zoning district." *Property Maintenance Code* § 302.11.

[16] R032.

[17] R033.

[18] *See* R022.

4

on McCafferty's property).[19]   Reasoning that the second citation was a mere continuation of the first citation, McCafferty argued that the second citation should be dismissed as well.[20]

On February 26, 2020, the Administrative Hearing Officer issued a decision denying McCafferty's appeal.[21]   The Administrative Hearing Officer noted that Officer Yasik had taken the photographs during the course of his official duties, so, pursuant to the Unified Development Code, he had a right to enter the neighbor's yard.[22]   The Administrative Hearing Officer also pointed out that McCafferty had not presented any evidence that his neighbor refused Officer Yasik's entry.[23]   Lastly, the Administrative Hearing Officer clarified that the first citation had been dismissed without prejudice because it was unclear where Officer Yasik had been standing, not because Officer Yasik had, in fact, been standing on McCafferty's property.[24]

On March 13, 2020, McCafferty appealed the Department's decision to the Board.[25]   On March 16, 2020, the Department received a Stay of Action request from McCafferty.[26]   The request asked the Department to halt further investigations of his property until June 15, 2020 so that McCafferty could address the debris issue on his

---

[19] *Id.*
[20] *Id.*
[21] R022–23.
[22] R022.
[23] *Id.*
[24] *Id.*
[25] R033.
[26] *Id.*

property.[27]  On March 26, 2020, the Department granted McCafferty's request and informed McCafferty that his hearing with the Board would be delayed due to COVID-19.[28]  The hearing took place on August 26, 2020.[29]  On September 15, 2020, the Board affirmed the Department's decision denying McCafferty's appeal.[30]  On October 15, 2020, McCafferty filed a Petition for a Writ of *Certiorari* in this Court.[31]

## III.  STANDARD OF REVIEW

A party who is aggrieved by a Board decision does not have a right to appellate review.[32]  Rather, the party must file petition for a writ of *certiorari* with this Court.[33]  The Court's review in a *certiorari* proceeding is limited.[34]  The Court "may not weigh evidence or review the lower tribunal's factual findings."[35]  Nor

---

[27] *Id.*

[28] *Id.*

[29] R035.

[30] R032–043.

[31] *See generally* Petition in Proceedings for Extraordinary Writ (Trans. ID. 66025509).  On January 4, 2021, McCafferty filed his Opening Brief.  Opening Brief (Trans ID. 66223306).  On January 20, 2021, the Department and Officer Yasik filed their Answering Brief.  *See generally* Respondents New Castle County Department of Land Use, Office of Code Enforcement and Code Officer Christopher Yasik's Answering Brief ("Answering Brief") (Trans. ID. 66270688).  On February 15, 2021, McCafferty filed his Reply Brief.  Petition Final Reply Brief ("Reply Brief") (Trans. ID. 66339724).

[32] *Black v. New Castle Cnty. Bd. of License*, 117 A.3d 1027, 1030 (Del. 2015) (citation omitted).

[33] *Property Maintenance Code* § 106.3.1.6.8 ("*Writ of certiorari*. An aggrieved party may appeal the decision of the Board of License, Inspection and Review by filing a petition for a writ of certiorari in the Delaware Superior Court."); *see also Black*, 117 A.3d at 1030.

[34] *See Black*, 117 A.3d at 1030–31 (citations omitted).

[35] *Id.* at 1031 (internal quotation marks and citations omitted).

may the Court "consider the case on its merits."[36]  The Court may only examine the face of the record to determine whether the Board (1) "exceeded its jurisdiction" (2) "proceeded illegally or manifestly contrary to law," or (3) "proceeded irregularly."[37]

## IV.  DISCUSSION

### A.    The Complaint-Driven System

McCafferty first argues that the complaint-driven system of code enforcement is unconstitutional because it amounts to a selective and arbitrary enforcement of the law.[38]  According to McCafferty, if no one complains about a property that contains a code violation, that violation goes overlooked.[39]  In addition, spiteful homeowners can weaponize the system by filing anonymous complaints—even if unfounded— without ever having to face confrontation.[40]   McCafferty suggests that code enforcement officers should be required to obtain a search warrant when responding to anonymous complaints.[41]

To begin, McCafferty has not identified which provision of which constitution he believes the complaint-driven system of code enforcement violates.  As a general matter, Delaware courts do not fish for constitutional violations in legislative

---

[36] *Id.* (internal quotation marks and citations omitted).
[37] *Id.* (internal quotation marks and citations omitted).
[38] Opening Brief, at 7 (Trans. ID. 66223306).
[39] *Id.*
[40] *Id.* at 7–8.
[41] *Id.* at 8.

schemes.[42]  Constitutional questions aside, there are sound policy reasons to enact a complaint-driven system.  For example, investigations demand resources, so it would be burdensome for the Department to have to seek out violations on its own.[43] And if the Department *were* to seek out violations on its own, that could bring about the very arbitrariness that McCafferty fears.  As for the issue of anonymous complainants, there is no evidence that McCafferty was the target of a neighbor's grudge.  The anonymous complainant cited rat problems at two addresses in addition to McCafferty's.  If McCafferty nonetheless believes that the complaint-driven system needs amending, his remedy is to petition the New Castle County Council.

## B.     The Computer System

McCafferty argues that the Department's code-enforcement computer system violates "due process, innocent until proven guilty, double jeopardy, etc."[44]  He contends that Officer Yasik should not have visited his property after the first citation was dismissed.[45]

---

[42] *See Terex Corp. v. S. Track & Pump, Inc.*, 117 A.3d 537, 549 (Del. 2015) (citation and internal quotation marks omitted) (quoting *Richardson v. Wile*, 535 A.2d 1346, 1350 (Del. 1988)) ("[W]here a possible infringement of a constitutional guarantee exists, the interpreting court should strive to construe the legislative intent so as to avoid unnecessary constitutional infirmities.").

[43] Other government agencies have cited inadequate resources as a reason for maintaining a complaint-driven system. *See, e.g.*, *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007) ("[D]ue to inadequate resources, [Planning and Zoning Office] staff investigate violations of the ordinance only when a citizen files a complaint against a particular landowner.").

[44] Opening Brief, at 8 (Trans. ID. 66223306).

[45] *Id.* at 9

First, the presumption of innocence and the protection from double jeopardy apply in the criminal context, not in the civil context.[46]  Next, McCafferty does not explain how the computer system violates his due process rights.  If his argument is that the dismissal of his first citation precluded further action by the Department, the Board addressed that issue during the hearing.[47]  The Board questioned Officer Yasik, who explained that the Administrative Hearing Officer's dismissal without prejudice was not a definitive ruling on the merits, so McCafferty's case remained open on Officer Yasik's computer system.[48]

## C.     Officer Yasik's Entry of Private Property

McCafferty argues that Officer Yasik violated his and his neighbor's right to privacy by entering their properties without a warrant.[49]  Hence, McCafferty maintains that Officer Yasik's photographs "should be excluded as tainted evidence."[50]  And without those photographs as evidence, McCafferty reasons, the second citation must be dismissed.[51]

---

[46] *Mercedes-Benz of North America, Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1365 (Del. 1991) (noting that "the presumption of innocence does not apply" in civil cases); *State v. Kamalski*, 429 A.2d 1315, 1318 (Del. 1981) (citation omitted) ("When the penalty sought to be imposed is a civil penalty, no question of double jeopardy arises.").

[47] R076–78

[48] *Id.*

[49] Opening Brief, at 9 (Trans. ID. 66223306).

[50] *Id.* at 10.

[51] *Id.*

As a factual matter, the record shows that the Administrative Hearing Officer did not conclude that Officer Yasik was in McCafferty's yard when he took the first round of photographs. Rather, the Administrative Hearing Officer could not determine where Officer Yasik was located. And nothing in the record shows that Officer Yasik entered McCafferty's property in connection with the second round of photographs. Officer Yasik testified that he entered the yard of McCafferty's neighbor, which the Unified Development Code permitted him to do.[52]

Turning to McCafferty's Fourth Amendment concerns, the Court first notes that McCafferty lacks starting to assert a violation of his neighbor's Fourth Amendment rights.[53] As for McCafferty's own Fourth Amendment rights, Officer Yasik committed no violation. Officer Yasik entered the yard of McCafferty's neighbor pursuant to the Unified Development Code.[54] From that location, Officer Yasik could observe whatever was visible to him without offending the Fourth Amendment.[55]

---

[52] R067 (citing § 40.01.210 of the *Unified Development Code*). The "Unified Development Code" is Chapter 40 of the New Castle County Code.

[53] *See Everett v. State*, 186 A.3d 1224, 1229 n.16 (Del. 2018) (quoting *Hanna v. State*, 591 A.2d 158, 163 (Del. 1991)) ("[S]tanding to challenge government action as an unconstitutional search depends on 'whether the person . . . has a legitimate expectation of privacy in the invaded place.'").

[54] *Unified Development Code* § 40.01.210 ("Employees or agents of the Department who are acting in the official performance of their duties, pursuant to a . . . complaint or violation, shall have the right to enter, go upon, and inspect at reasonable times any land, either public or private, outside of any municipality, . . . provided that any such entry shall be made with due care and regard for the protection and preservation of property.").

[55] *Kyllo v. United States*, 533 U.S. 27, 32 (2001) (citing *Dow Chemical Co. v. United States*, 476 U.S. 227, 234–235, 239 (1986)) ("[W]e have held that visual observation is no 'search' at all . . . ."); *see also Cal. v. Ciraolo*, 476 U.S. 207, 213 (1986) (emphasis added) (citation omitted)

**D.    Vague, Ambiguous, and Subjective Terms**

McCafferty argues that the Board used unconstitutionally vague, ambiguous, and subjective terms like "junk" and "debris."[56] The Court assumes that McCafferty is referring to the term "debris," which is defined in the Property Maintenance Code.

An ordinance is "unconstitutionally vague if it fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited[] so that he may act accordingly.'"[57] An ordinance is "ambiguous if 'it is reasonably susceptible of different conclusions or interpretations' or 'if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature.'"[58]

The Property Maintenance Code defines "debris" as

> material which is stored externally and exposed to the elements or partially covered with tarps or plastic. This definition includes, but is not limited to, the following: indoor furniture, discarded household goods or appliances and appliance parts, inoperative or discarded machinery, automobiles, automobile parts, airplane and helicopter parts, refuse, rubbish, trash or junk, broken concrete, bricks, blocks or

---

("That the area is within the curtilage does not itself bar all police observation. The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. *Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.*").

[56] Opening Brief, at 6 (Trans. ID. 66223306).

[57] *In re Hanks*, 553 A.2d 1171, 1176 (Del. 1989) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

[58] *Terex Corp. v. S. Track & Pump, Inc.*, 117 A.3d 537, 543 (Del. 2015) (internal quotation marks and citations omitted).

other mineral matter, bottles, scrap or discarded lumber, pipe, steel, paper, cardboard, insulation or other building materials.[59]

The Court finds that the definition of "debris" is neither vague nor ambiguous on its face. Even if the definition includes words like "junk," it also includes several specific examples. Reading the definition as a whole would "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited."[60] As applied to McCafferty's case, Officer Yasik testified that he encountered, among other items, broken fencing, PVC pipes, an old window, back plastic items, and a pool ladder.[61] The Board was satisfied—as is the Court—that these items met the definition of "debris."[62]

### E. McCafferty's Stay

McCafferty argues that Officer Yasik violated § 106.3.1.2.4.4 of the Property Maintenance Code—the Code's automatic stay provision.[63] Specifically, McCafferty avers that Officer Yasik violated the stay by visiting his property after he had filed an appeal.[64]

Section 106.3.1.2.4.4 provides, "Except as provided for in Section 108 of this Chapter, an appeal of a violation under this Section shall act as an automatic stay of

---

[59] *Property Maintenance Code* § 202.
[60] *Del. Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 957 (Del. 2020) (emphasis, internal quotation marks, and citation omitted).
[61] R038.
[62] R042.
[63] Opening Brief, at 5 (Trans. ID. 66223306).
[64] *Id.*

the action being appealed."[65]  To determine whether Officer Yasik violated this section, it is important to identify (1) the period in which McCafferty had a pending appeal and (2) the sort of conduct that would violate the section were it performed during a pending appeal.

As for the first issue, the record does not specify the date on which McCafferty appealed his first citation.  The record does show, however, that McCafferty received the citation on November 12, 2019 and that his appeal of that citation was dismissed without prejudice on December 19, 2019.  Thus, the appeal period would have started no earlier than November 12, 2019 and ended no later than December 19, 2019.

The second issue is determining what kind of conduct, if performed during the appeal period, would constitute a violation of § 106.3.1.2.4.4.  McCafferty believes that the investigation of his property qualifies as a violation.  Officer Yasik presented the Board with a different interpretation of § 106.3.1.2.4.4, which the Board appears to have endorsed:

> When asked by the Board about the stay of action, Officer Yasik stated that once a ticket is issued, the Department will not *issue another ticket* during the pendency of the appeal. However, inspections of a property, without issuing a ticket, may still occur to see if the homeowner addressed the issue. Thus, while the Applicant accused the Department

---

[65] *Property Maintenance Code* § 106.3.1.2.4.4.

of continuously inspecting the Property, such inspections are permitted (and customary) under the *Property Maintenance Code*.[66]

Officer Yasik did not issue the second citation until January 17, 2020—after the first citation had been dismissed—so the Board did not find a violation of the stay. Although McCafferty might believe that a mere investigation violates § 106.3.1.2.4.4, he has not shown that the Board's conclusion was "manifestly contrary to law," and, for that reason, the Court cannot disturb it.[67]

### F.    Perjury Allegation

McCafferty argues that Officer Yasik committed perjury when he sought a warrant in the Justice of the Peace Court.[68]  According to McCafferty, this occurred in March 2020, which places the incident outside of the scope of this case; the issue in this case is the validity of the January 17, 2020 citation.[69]  But more importantly, McCaffery does not support this serious accusation with any evidence.  Nor did he present any evidence during the Board hearing, during which he openly suggested that Officer Yasik could be lying to the Board.[70]

---

[66] R039 (emphasis added).

[67] *Black v. New Castle Cnty. Bd. of License*, 117 A.3d 1027, 1031 (Del. 2015) (internal quotation marks and citations omitted).  The Court also notes that the stay that McCafferty requested in March 2020 is outside the scope of this case; this case is about the validity of the January 17, 2020 citation.

[68] Opening Brief, at 13 (Trans. ID. 66223306).

[69] *See* R042–043.

[70] R089 ("So, I -- I find that -- the officer's statements to be in question and the understanding of the law -- he lied to a judge -- why wouldn't he be lying to you people now, you know? He lied to get a warrant in March, why won't he lie to you now -- save his job? He doesn't understand it.").

14

**G.     Right to a Fair Hearing**

McCafferty argues that he was denied a fair hearing in violation of his right to due process because "the NCC representative was prosecutor and judge" during his administrative hearings.[71]  He notes that Officer Yasik did not appear to present his case to the Administrative Hearing Officer at the February 18, 2020 hearing.[72] McCafferty proposes that "[t]he manner in which NCC conducts these hearings should be . . . changed to mirror civil citations in JP Court. . . . If the officer does not show, the case is dismissed with prejudice."[73]  McCafferty also argues, as a separate matter, that the Board denied him a fair hearing because it abruptly ended the hearing.[74]

McCafferty's first argument is less about due process and more about the separation of powers and the structure of administrative agencies.  The Court need not delve into those subjects here.  And if McCafferty is inviting the Court to restructure the Department's adjudicative procedures, the Court would again direct McCafferty to the legislative branch.  As for McCafferty's argument that the Board cut short his presentation, the record suggests otherwise.  Notably, the last argument that McCafferty made before the Board was an argument that he had made earlier in

---

[71] Opening Brief, at 13 (Trans. ID. 66223306).
[72] *See* Reply Brief, at 2 (Trans. ID. 66339724).
[73] *Id.*
[74] Opening Brief, at 13 (Trans. ID. 66223306).

15

the proceeding.[75]  And when the Board ended the hearing, it did so because it was satisfied that it had gathered enough facts to determine whether the Department had acted in an arbitrary and capricious matter.

### H.    Americans with Disabilities Act

McCafferty argues for the first time in his Reply Brief that the Department did not grant McCafferty a reasonable accommodation in accordance with the Americans with Disabilities Act.[76]  The Court need not entertain this argument.  It does not appear in the record,[77] and McCafferty did not raise it in his Opening Brief.[78]

## V.  CONCLUSION

After a careful inspection of the record, the Court finds that the Board did not exceed its jurisdiction, proceed illegally or manifestly contrary to law, or proceed irregularly.  Accordingly, the Board's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

---

[75] McCafferty's final argument at the hearing was that the objects in Officer Yasik's photographs were "not junk" but were instead McCafferty's "personal stuff."  R098.  McCafferty made this same argument earlier in the hearing.  R079–80.

[76] Reply Brief, at 3 (Trans. ID. 66339724).

[77] *Black v. New Castle Cnty. Bd. of License*, 117 A.3d 1027, 1031 (Del. 2015) (internal quotation marks and citation omitted) (noting that "*certiorari* involves a review of only such errors as appear on the face of the record").

[78] *Ethica Corporate Fin. v. Dana Inc.*, 2018 WL 3954205, at *3 (Del. Super. Ct. Aug. 16, 2018) (citations omitted) ("Courts may disregard or deem waived any arguments made in a reply brief which was not raised in the opening brief.").

*Jan R. Jurden*

_____

Jan R. Jurden, President Judge

cc: Prothonotary